# EXHIBIT N

# In the Matter of:

# FTC v. Vision Solution Marketing, et al.

*June 19, 2018*
*Stuart Smith*

**Condensed Transcript with Word Index**



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

US_604722

5

record.

A. Stuart Smith. Stuart Michael Smith.

Q. Okay. And are you represented by counsel today?

A. I am, yes.

Q. And who is that?

A. Karra Porter and J.D. Lauritzen.

Q. Are you employed?

A. Yes.

Q. Where do you work?

A. Right now I work with Red Steele as a contractor. And then I also work at Learning Systems.

Q. What's your title at Learning Systems?

A. Account manager.

Q. Do you work anywhere else?

A. No.

Q. Okay. Are you involved in any other businesses?

A. No.

Q. You said you worked at Red Steele as a contractor. What are your duties at Red Steele?

MS. PORTER: Objection. That misstates what he said.

Q. I'll rephrase the question.

What do you do at Red Steele?

6

A. The company brokers leads, names, contact information.

Q. And what do you do in relation to the brokering of leads?

A. I sell the leads. So we work with anyone interested in buying a name and a phone number. So my role and responsibility is obviously selling the information and then invoicing and making sure that the invoices are paid.

Q. When did you start working as a contractor for Red Steele?

A. Spring of 2017.

Q. Have you had any other roles at Red Steele?

A. No.

Q. Does Red Steele have employees?

A. Yes. It is small. There's three total.

Q. Who are they?

A. Mike Brunsvold, who owns the company, and then myself, and Jared Peterson.

MS. PORTER: Could I have that question read back?

(The record was read as follows:

Question: Does Red Steele have employees? Who are they?")

7

Q. To the extent you know, do you consider yourself an employee or a contractor of Red Steele?

A. Contractor.

Q. Do you have a written contract describing your relationship with Red Steele?

A. No.

Q. Have you ever had one?

A. No.

Q. Does Red Steele have an office?

A. No.

Q. So when you do work for Red Steele, where do you do it?

A. I work some from home, but a lot of my time is spent in the car.

Q. And what do you do in the car for Red Steele?

A. Well, I'm on the phone a lot, but then I'll also -- it's not a full-time thing, if that makes sense. It is a fairly small company, and so usually Thursdays and Fridays, Friday mornings I'll spend working on Red Steele. And then maybe a little bit here and there throughout the week.

Q. When you said Thursday and Friday, is that all day Thursday and all day Friday, or less than that?

A. Less than that.

8

Q. How much would you say of Thursday and Friday, at the present time, do you spend on Red Steele work?

A. Thursday and Friday, probably maybe two to three hours on Friday and maybe seven to eight hours on Thursday.

Q. And where does Mike Brunsvold do his work for Red Steele?

A. I'm not sure where he does the work.

Q. Okay. And you mentioned that Mike Brunsvold was the owner of Red Steele; is that correct?

A. Correct.

Q. And has he always been the owner?

A. Yes.

Q. Has there ever been another owner?

A. No.

Q. Where does Jared Peterson do his work for Red Steele?

A. From home.

Q. Is that in Utah?

A. Yes.

Q. In what town?

A. Saratoga Springs.

Q. Have there ever been any investors in Red Steele?

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

US_604724

21

A. Brigham Young University.

Q. When did you graduate?

A. That's a good question. I honestly -- it was probably -- I honestly can't remember. Is that bad?

Q. Can you place it in a decade?

A. Yeah. Early 2000s.

Q. Okay.

A. Is that okay?

Q. Whatever you remember. And what was your degree in?

A. Sociology.

Q. And where did you work after that?

A. I worked at Costco.

Q. Doing what?

A. I did anything from -- you know. I started pushing carts to working in the bakery, sales, merch, supervising. Really, they put you all over.

Q. How long did you do that?

A. I'd say four or five years.

Q. Okay. What did you do after that, work-wise.

A. A landscape nursery.

Q. And what did you do there?

A. I owned it and ran it.

22

Q. How long did you do that for?

A. Four years.

Q. What did you do work-wise after that?

A. I worked at Thrive.

Q. Did you have a title there?

A. Account manager.

Q. When did you start working at Thrive?

A. I honestly can't remember the year.

Q. Was it after 2010 or before?

A. I think it was before.

Q. Is it possible -- well, what kind of business did Thrive do?

A. They did coaching and fulfillment.

Q. And when you say "coaching," what do you mean by that?

A. They would provide sessions and tools for people interested in making money; you know, anywhere from real estate or internet or self-help.

Q. Did you focus on any particular one of those areas?

A. No.

Q. And, generally speaking, what were your responsibilities with Thrive?

A. Same, account management. So developing relationships and working with different sales floor

23

owners.

Q. Did you have any responsibilities related to leads there?

A. No.

Q. And who did you report to when you worked at Thrive?

A. Matt Rasmussen.

Q. And did you work with someone named Jennifer Shaw when you were there?

A. At Thrive?

Q. Yes.

A. Yes.

Q. Did you have a similar or different role from Jennifer Shaw?

A. Similar as far as account management, yes.

Q. And was it different in some ways?

A. No. I mean, we essentially did the same thing as far as managing different accounts.

Q. Okay. Did you have a set of accounts that was your accounts?

A. Yes.

Q. Okay. And were they in any particular area?

A. No. Like, what do you mean by "any particular area"? Like a geographical area?

24

Q. I'll rephrase it. Were your accounts in any particular geographic area or type of business?

A. No.

Q. How long did you work at Thrive?

A. A couple years.

Q. And where did you go after that?

A. Guidance.

Q. What was your title at Guidance?

A. Account manager.

Q. And what did you do at Guidance?

A. Managed relationships. Is that -- yeah.

Q. And when you say "managed relationships," was that with sales floors or with others?

A. With sales floors.

Q. And what kind of sales floors?

A. They would sell e-commerce products or, you know, real estate, self-help, personal development.

Q. When you say e-commerce, what do you mean by that?

A. If they were looking to learn more about eBay or Amazon or building a website and finding a supplier and selling products online.

Q. And did the sales floors you worked with work with individuals from around the country?

A. I'm sorry?

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

US_604728

125

you had a management role at Red Steele and Learning Systems. What's your understanding of what a management role is?

A. If I would be managing other employees. Or managing -- I guess managing other employee.

Q. And your counsel also asked you about whether you had decision-making authority at Red Steele and Learning Systems. What is your understanding of what decision-making authority is in that context?

A. I guess making decisions to direct the business. Influence the business as far as hiring or firing employees or if it was negotiating on pricing or setting anything like that.

Q. Okay. Did you report to anyone when you worked at Red Steele?

A. Mike.

Q. And that's Mike Brunsvold?

A. Yes.

Q. And you mentioned he was the owner, correct?

A. Correct.

Q. Other than being the owner, what did he do for Red Steele?

A. He does like the financials, making sure the wires are sent out, taxes, the bookkeeping, all of

126

that fun stuff, the fun stuff.

Q. Okay. And at Learning Systems did you report to anyone?

A. Taylor.

Q. And that's Taylor Jones?

A. Yes.

Q. And he is the president of Learning Systems?

A. Yes.

Q. Okay.

(The deposition concluded at 12:57 p.m.)

127

REPORTER'S CERTIFICATE

STATE OF UTAH        )
                     ) ss
COUNTY OF SALT LAKE  )

I, Diana Kent, Registered Professional Reporter and Notary Public in and for the State of Utah, do hereby certify:

That prior to being examined, the witness, Stuart Smith, was by me duly sworn to tell the truth, the whole truth, and nothing but the truth;

That said deposition was taken down by me in stenotype on June 19, 2018, at the place therein named, and was thereafter transcribed and that a true and correct transcription of said testimony is set forth in the preceding pages;

I further certify that, in accordance with Rule 30(e), a request having been made to review the transcript, a reading copy was sent to Attorney Karra Porter for the witness to read and sign, and the original transcript will be delivered to Attorney Christopher Miller for safekeeping

I further certify that I am not kin or otherwise associated with any of the parties to said cause of action and that I am not interested in the outcome thereof

WITNESS MY HAND AND OFFICIAL SEAL this 21st day of June, 2018

s/Diana Kent

Diana Kent, RPR, CRR
Notary Public
Residing in Salt Lake County

128

Case: FTC v VSM et al
Case No : 2:18-CV-00356-TC
Reporter: Diana Kent
Date taken: June 19, 2018

WITNESS CERTIFICATE

I, STUART SMITH, HEREBY DECLARE:
That I am the witness in the foregoing transcript; that I have read the transcript and know the contents thereof; that with these corrections I have noted this transcript truly and accurately reflects my testimony

PAGE-LINE          CHANGE/CORRECTION          REASON
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____
_____  _____  _____

_____ No corrections were made

I, STUART SMITH, HEREBY DECLARE UNDER THE PENALTIES OF PERJURY OF THE LAWS OF THE UNITED STATES OF AMERICA AND THE LAWS OF THE STATE OF UTAH THAT THE FOREGOING IS TRUE AND CORRECT

_____
Stuart Smith

_____
Date Signed

32 (Pages 125 to 128)