

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 22, 2021

**BY ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *United States v. Anthony Cheedie, et al.*, 19 Cr. 833 (SHS)
      *United States v. Arash Ketabchi, et al.*, 17 Cr. 243 (SHS)

Dear Judge Stein:

  The Government respectfully submits this letter in connection with the sentencing proceedings scheduled to take place on August 2, 2021, for Derrek Larkin and Joseph DePaola, as well as the remaining defendants in the above-referenced cases (the "defendants"). Consistent with the Court's order, the Government sets forth below its view as to each defendant's relative culpability and provides the factual basis for its assessment, to be expanded upon in any future sentencing submissions.

  As the Court will recall, in March 2019, the Government advised the Court as to its view of the relative culpability of the defendants then charged in the *Ketabchi* case by designating those defendants in Tiers 1 through 4 and ranking them in order of greatest to least culpability within tiers. Bolded below, and placed in the appropriate tiers relative to the *Ketabchi* defendants are those defendants who have been charged (or had guilty pleas unsealed) since the Government's 2019 letter, and include Carl Morris (who was charged in 17 Cr. 201 (SHS)), the defendants charged in *Cheedie*, and defendants later charged in *Ketabchi*. Because many of the bolded defendants are more senior participants in the Telemarketing Scheme, and many continued to participate in the Scheme after they became aware of the criminal charges brought in the initial *Ketabchi* case, the Government has added a new Tier A to reflect their greater culpability while preserving its prior Tier designations. In assessing the relative culpability of each defendant, the defendants fall into the following tiers:

  Tier A

  **Jennifer Shah**
  **Carl Morris – sentenced to 78 months' imprisonment**
  **Cameron Brewster**
  **Kevin Handren**

Rev. 07.20.2016

**Ryan Hult – sentenced to 60 months' imprisonment**
**Stuart Smith**

Tier 1
Arash Ketabchi – sentenced to 87 months' imprisonment
Christopher Wilson – sentenced to 78 months' imprisonment
**Jason Sager**
**Joseph Minetto**
**Chad Allen**
**Shane Hanna**
**Anthony Cheedie**
**Joseph Ciaccio**

Tier 2
Joseph McGowan - sentenced to 72 months' imprisonment
William Sinclair
Peter DiQuarto
Michael Finocchiaro – sentenced to 15 months' incarceration
Raymond Quiles – sentenced to 366 days' incarceration[1]

Tier 3
Jack Kavner - sentenced to 72 months' imprisonment
Daniel Quirk - sentenced to 366 days' imprisonment
**Derrek Larkin**
Anthony Medeiros - sentenced to 66 months' imprisonment (17 Cr. 704 (NSR))
Brooke Marcus
Andrew Owimrin - sentenced to 52 months' imprisonment
**Joseph DePaola**

Tier 4
Shahram Ketabchi – sentenced to 4 months' imprisonment
Thomas O'Reilly – sentenced to 366 days' imprisonment
**Mattie Cirilo – sentenced to a 12-month term of home confinement**

    Tier A includes those defendants responsible for orchestrating the broader scheme (the "Telemarketing Scheme" or "Scheme") in the Western United States and supplying the leads that sustained the sales floors (the 'Telemarketing Companies") in the New York and New Jersey area. In particular, Jennifer Shah and Stuart Smith obtained leads directly from lead sources and provided them to, among others, coaching sales floors operated in Utah and Nevada by Kevin Handren and Cameron Brewster. Carl Morris generated leads from his sales floors in Arizona, and Ryan Hult acted as one of the primary brokers of leads from Arizona and Utah to floors in New York and New Jersey. Shah and Smith also owned and operated a sales floor in Manhattan

---

[1] The Government previously advised the Court of its view that Quiles was in Tier 4, but the Government's view has changed in light of its continuing investigation, and it now believes Quiles is more comparable to the defendants previously listed in Tier 2.

that sold BizOp products to Victims who had previously purchased coaching from Handren and Brewster.

Tier 1 includes those defendants who both (1) acted as owners or operators of one the Telemarketing Companies in the New York and New Jersey area, and (2) engaged in some particularly egregious conduct in connection with the Victims of the Telemarketing Scheme and the operation of the scheme overall, including by continuing to operate sales floors after knowledge of the *Ketabchi* case. In other words, the defendants in Tier 1 are the most culpable individual sales floor owners, but are less culpable than those defendants in Tier A.

Tier 2 includes those defendants who owned or managed one or more of the Telemarketing Companies, but who did not continue to operate after having knowledge of the of the *Ketabchi* case or otherwise engage in the most egregious conduct.

Tier 3 includes those defendants who worked for the Telemarketing Companies, but were not themselves owners, and instead worked as salespersons or were responsible for communicating with the Victims.

Tier 4 includes the defendants with the least culpability as compared to others charged, and either had a role in the scheme that was limited in time, scope, or both.

The Government's view on relative culpability is based on the defendants' conduct and individual characteristics, but does not account for any of the defendants' efforts to cooperate or any substantial assistance, which in certain cases may warrant a variance from the applicable Guidelines Range at sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: _____
Kiersten A. Fletcher
Robert B. Sobelman
Sheb Swett
Assistant United States Attorneys
(212) 637-2238/2616/6522

Cc: All Counsel (by ECF)

Rev. 07.20.2016