UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

CAMERON BREWSTER, CHAD ALLEN,
and JENNIFER SHAH,

Defendants.

---

19-Cr-833 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

The indictment in this action charges 13 defendants with participating in an extensive, long-running telemarketing fraud conspiracy that sold millions of dollars of essentially nonexistent services and products to elderly, unsophisticated consumers. (ECF Nos. 1, 186.) Two defendants—Cameron Brewster and Jennifer Shah—have now made omnibus pretrial motions requesting a variety of relief.[1] The Court heard oral argument on July 23 and now renders its decision on those motions.

Brewster's motion sought an order (1) compelling the government to provide a bill of particulars, (2) suppressing evidence derived from the execution of two search warrants, (3) suppressing recorded telephone calls involving Brewster and a cooperating witness or, in the alternative, an order that the government produce all discovery concerning the circumstances of those calls and to conduct an evidentiary hearing to determine whether these calls were lawfully secured, (4) compelling the government to produce immediately *Brady*, *Giglio*, and Jencks Act material, and (5) compelling the disclosure of grand jury testimony. (ECF Nos. 114, 115.)

Shah's motion sought an order (1) dismissing the superseding indictment, (2) compelling the government to provide a bill of particulars, (3) suppressing evidence seized pursuant to two search warrants, or alternatively for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), (4) granting review of the grand jury minutes, (5) compelling discovery of *Brady* and *Giglio* material, as well as the post-arrest statements of co-defendant Stuart Smith, and (6) suppressing Shah's post-arrest statements in their entirety. (ECF Nos. 259, 260.)

## I. DISCUSSION

### A. Brewster's and Shah's Requests for a Bill of Particulars

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending

---

[1] Defendant Chad Allen has joined in Brewster's motion. (ECF No. 118.)

against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam) (citations omitted). The Court acts within its "sound discretion" when determining whether or not to grant a defendant's request for a bill of particulars. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds, United States v. House*, 636 F. App'x 50 (2d Cir. 2016).

Shah requests the government provide a bill of particulars specifying:

   a) The alleged victims of the fraud;
   b) A list of all sales floors that the government alleges were involved with Ms. Shah's activities;
   c) Any alleged "business services" provided to victims;
   d) The alleged co-conspirators; and
   e) The financial transactions the government alleges violated the money laundering statute.

(ECF No. 260 at 17-18.)

Brewster seeks a similar bill of particulars specifying:

   a) The alleged misrepresentations and false promises the defendants made to victims;
   b) The specific fraudulent conduct the government alleges the defendants committed;
   c) A list of services or things of value defendants offered to victims; and
   d) A specific allegation of Brewster's connection with the conspiracy.

(ECF No. 115 at 6-7.)

"'A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *Torres*, 901 F.2d at 234 (quoting *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (mem.)). "A bill of particulars is not a general investigative tool, a discovery device [,] or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001) (citations omitted). "It is not the function of a bill of particulars to allow defendants to preview the evidence or theory of the government's case." *Id.* (citations omitted).

The Court denies Brewster and Shah's requests for a bill of particulars. "Demands for information 'with respect to where, when, and with whom the Government will charge the

2

defendant with conspiring are routinely denied.'" *United States v. Lopez*, No. 18-CR-736, 2019 WL 4733603, at *8 (S.D.N.Y. Sept. 27, 2019) (quoting *United States v. Guerrero*, 669 F. Supp. 2d 417, 426 (S.D.N.Y. 2009)). Requests for specific dates the defendant joined a charged conspiracy or committed acts in furtherance of the conspiracy have also been routinely denied. *United States v. Columbo*, No. 4-CR-273, 2006 WL 2012511, at *5 (S.D.N.Y. July 18, 2006) (citing *United States v. Nachamie*, 91 F. Supp. 2d 565, 574-76 (S.D.N.Y. 2000)).

Although the Court is cognizant that this case involves a high volume of discovery—one of the factors that may support requiring a bill of particulars, *see United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988); *Bortnovsky*, 820 F.2d at 574—the government has shown that it is in the process of responding to defendants' requests for information. For example, the government has provided to the defense, among other items, 1) detailed affidavits filed in support of search warrants, outlining the charged scheme and containing excerpts from victim interviews, 2) materials provided by the FTC gathered in the course of the FTC's investigation of the telemarketing scheme at issue, 3) documents provided by victims, 4) records of sales to victims, 5) financial records showing the flow of victim funds to, among other places, accounts that the defendant controlled, 6) a copy of all exhibits, 18 U.S.C. § 3500 material, and witness statements from the trial of the related *Ketabchi* case, and 7) a list of 41 sales floors, fulfillment floors, and co-conspirators included in the charged scheme. (*See* ECF No. 290 at 24-25; Tr. dated July 23 at 38-29, 77.)

At oral argument, the defense affirmed that it would continue to relay specific discovery requests to the government and the government affirmed that it would continue to work with the defense to provide requested information. (Tr. dated July 23 at 42, 80, 82-83.) Because the defense has received, and will continue to receive, information from the government that will assist them in preparing their defense, the motion to compel a bill of particulars as to all defendants is denied without prejudice. *See United States v. Fea*, No. 10-CR-708, 2011 WL 2119708, at *2 (S.D.N.Y. May 24, 2011) (noting that defendant's request for bill of particulars identifying victims was meritless where government had produced other discovery containing the names of putative victims); *United States v. Rittweger*, 259 F. Supp. 2d 275, 292 (S.D.N.Y. 2003) (denying request for bill of particulars where defendants had received other discovery that they could use to determine the identities of the alleged victims).

## B. Brewster's Request to Suppress Evidence Derived from Execution of Search Warrants[2]

Brewster also moves to suppress evidence derived from two search warrants: one for Brewster's private residence, and one for 2121 East Tropicana Avenue, Studio 4, Las Vegas,

[2] Shah previously moved to suppress the fruits of two search warrants—one for historical cellphone location data for phone numbers belonging to Shah and another for records relating to the email address jenshah@comcast.net—but has now withdrawn that motion. (ECF No. 294 at 1.) Accordingly, the Court addresses only Brewster's motion in regard to search warrants.

Nevada. (ECF No. 115 at 7-8.) He avers that both search warrants were based on false and misleading information, including:

a) Failure to disclose that a cooperating witness—CW-3—who provided information used to support the search warrant, has been forbidden by the FTC to engage in the work-from-home telemarketing industry and was under criminal investigation for his alleged role in a drug manufacturing and distribution ring;

b) Suggestions that the co-conspirators, including Brewster, secretly referred to the website that generated lead lists of potential victims as the "Money Sucking Website," when in fact, the website itself was publicly marketed as such; and

c) An allegedly false statement that Brewster "operated" the Money Sucking Website, as opposed to being employed by it.

(ECF No. 115 at 8-16.)

Brewster also alleges that that the search warrant was defective because it relied on information provided by CW-3, who Brewster contends is an unreliable witness due to his guilty plea to federal offenses in connection with his own role operating certain fraudulent telemarketing companies. (ECF No. 115 at 15.)

The Second Circuit has held that "[a] *Franks* hearing is warranted if the defendant can make a preliminary showing that (a) the warrant affidavit contains a false statement, (b) the false statement was included intentionally or recklessly, and (c) the false statement was integral to the probable cause finding." *United States v. Caraher*, 973 F.3d 57, 62 (2d Cir. 2020) (citation omitted). "In evaluating probable cause in any given case, a judge must make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, [] there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (internal quotation and quotation marks omitted). "The task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the [issuing judge] 'a substantial basis' for making the requisite probable cause determination." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Brewster's motion for a *Franks* hearing is denied because the statements and omissions he identifies in the agent affidavits were not sufficient to deprive the magistrate judge of a substantial basis for issuing the search warrants. The Court gives no weight to Brewster's contention that certain adjectives in the affidavit, including the agent's statements that participants in the telemarketing scheme provided "so-called" coaching services and sold victims "purported" businesses (ECF No. 115 at 13-14), tainted the magistrate's ability to determine whether probable cause existed to issue the search warrants. Moreover, although the affidavit did not mention that CW-3 was subject to an order related to separate litigation with the FTC, the affidavit did indeed disclose that CW-3 pleaded guilty "related to [his]

4

respective role[] operating certain of the Telemarketing Companies" and that CW-3 agreed to provide information to the government "in the hope of receiving leniency at sentencing." (ECF No. 116-1 at 7.) Considering these facts, the Court finds that the magistrate's determination that probable cause existed would not have been vitiated if he had knowledge of the FTC order against CW-3.

Brewster's second contention, that the affidavit's reference to the "Money Sucking Website" insinuated that he and his alleged co-conspirators secretly referred to the website by that name is immaterial because, as he admits, the website was publicly marketed with that term. (*See* ECF No. 115 at 10.) And his contention that CW-3 statement's that Brewster "operated" the "Money Sucking Website" is similarly inconsequential because the evidence shows that, at the very least, Brewster was directly affiliated with the "Money Sucking Website." (*See* ECF No. 115 at 12). Finally, Brewster may not challenge the accuracy of CW-3's information as relayed in the affidavit since "[t]here is no right to a hearing when the challenge is to information provided by an informant." *United States v. Cook,* 348 F. Supp. 2d 22, 29 (S.D.N.Y. 2004). If Brewster wishes to attack CW-3's credibility as a witness, he will have full opportunity to do so at trial.

The Court therefore finds that the magistrate judge possessed sufficient evidence which "articulated facts that showed the existence of an ongoing criminal enterprise," *United States v. Gotti,* 42 F. Supp. 2d 252, 272 (S.D.N.Y. 1999), and which justified the issuance of the warrants based on probable cause.

## C. Brewster's Request to Suppress Certain Recorded Telephone Calls or Compel the Government to Produce Discovery Concerning These Calls

Brewster also moves to suppress all recorded telephone calls involving Brewster and CW-3, or, in the alternative, for an order that the government produce all discovery concerning the circumstances of these calls and to conduct an evidentiary hearing to determine whether these calls were lawfully secured or should otherwise be excluded. (ECF No. 115 at 18-20.)

First, because CW-3 consented to these recordings, (*See* ECF No. 125 at 26,) Brewster lacks standing to bring a motion to suppress them under the Fourth Amendment. *See United States v. White,* 401 U.S. 745, 749 (1971). Second, the Court finds that the government has sufficiently complied with its discovery obligations with respect to the recordings by producing these recordings to the defense. (*See* ECF No. 115 at 19.) In addition, at oral argument and in its submissions, the government avers that it is in the process of creating a chart of certain information about the recordings at issue, including "the Bates number, duration, date, and the individuals captured on each recording." (ECF No. 125 at 32.) The Court thus denies Brewster's motion to suppress the recordings or to compel additional discovery related to these recordings.

5

## D. Brewster and Shah's Request to Compel Disclosure of Grand Jury Minutes

Both Brewster and Shah moved for disclosure of the grand jury minutes under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), or alternatively (in Shah's case), *in camera* review by the Court, for the purpose of determining whether the indictment was secured through false and misleading testimony. For the reasons set forth on the record at the July 23 hearing, there is absolutely no basis for that relief, and the defendants' motions are denied. (Tr. dated July 23 at 97.)

## E. Shah's Request to Dismiss the Superseding Indictment

Shah moves to dismiss the superseding indictment because it fails to 1) allege facts sufficient to establish that Shah joined the conspiracy willfully and with the specific intent to defraud, and 2) allege that fraudulent, material promises were made to the victims. (ECF No. 260 at 3, 14.) Neither contention survives even cursory scrutiny.

Shah is charged with conspiracy to commit wire fraud and conspiracy to commit money laundering. "The elements of wire fraud under 18 U.S.C. § 1343 are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate wires." *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (citation omitted). "To establish the first element, the government must prove (i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations." *Id.* (internal citations omitted) (citing *Neder v. United States*, 527 U.S. 1, 25 (1999)).

"An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 125-26 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). " 'Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.' " *Hamling*, 418 U.S. at 117-118 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)).

The superseding indictment here sufficiently alleges that Shah joined the telemarketing conspiracy willfully and with specific intent to defraud. It specifies that Shah "generated and sold leads to other [participants in the telemarketing scheme] for use by their telemarketing sales floors with the knowledge that the individuals they had identified as 'leads' would be defrauded by the other Participants." (ECF No. 186 ¶ 3.) Participants in the scheme "sold alleged services purporting to make the management of Victims' businesses more efficient or profitable . . . but at no point did the defendants intend that the Victims would actually earn any of the promised return on their intended investment, nor did the Victims actually earn any such returns." (*Id.* ¶ 4.) The indictment also alleges that Jennifer Shah and Stuart Smith "willfully and knowingly, did combine, conspire, confederate, and

agree together and with each other to commit wire fraud in connection with the conduct of telemarketing," (*Id.* ¶ 6), and "devised and intend[ed] to devise a scheme and artifice to defraud." (*Id.* ¶ 7.)  These allegations specifically allege Shah's willful participation in a scheme to defraud and are sufficient to inform Shah of the charges against her.

The Court also rejects Shah's argument that the indictment is deficient for failure to specifically allege that the misrepresentations made to the victims of the business opportunity scheme were material. The Second Circuit has recognized that "[t]he phrase 'scheme or artifice to defraud' requires 'material misrepresentations.'" *United States v. Rybicki*, 354 F.3d 124, 146 n.20 (2d Cir. 2003) (citation omitted). Because fraud necessarily requires material misrepresentations, in *United States v. Klein*, the Second Circuit rejected the defendant's claim there that "the indictment [for bank fraud] was defective because it failed to state that appellant's fraudulent acts were material." 476 F.3d 111, 113 (2d Cir. 2007). Drawing from *Neder*, the court found that "[i]f materiality can be inferred to be an element of criminal fraud because of the well-understood meaning of 'fraud' as a legal term, an allegation of materiality can be inferred from use of the word fraud in the indictment." *Id.* This is because "[c]onduct or speech that is immaterial—irrelevant—to a putative victim cannot be fraud." *Id.* at 114. Similarly, in *United States v. Weigand*, the district court rejected the defendant's arguments that an indictment alleging bank fraud was "insufficiently specific" for, *inter alia*, failing to point to specific transactions or misrepresentations and failing to allege that the misrepresentations at issue were material. 482 F. Supp. 3d 224, 238 (S.D.N.Y. 2020); *see also United States v. Wecht*, No. 6-CR-0026, 2007 WL 3125096, at *5 (W.D. Pa. Oct. 24, 2007) ("Failure of an indictment to allege materiality as an explicit element is not fatal to the indictment.").

Because the alleged scheme to defraud necessarily involves material misrepresentations, the pending indictment is not deficient for failure to allege materiality.

## F.  Shah's Request to Suppress Her Post-Arrest Statements

Shah moves to suppress her March 30, 2021 post-arrest statements, or in the alternative for a suppression hearing, on the grounds that her statements were involuntary. (ECF No. 260 at 48.) The government bears the burden of demonstrating by a preponderance of the evidence that a defendant has waived her constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See United States v. Lynch*, 92 F.3d 62, 65 (2d Cir. 1996). "To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citations omitted).

A *Miranda* waiver is voluntary "when the relinquishment is the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Medina*, 19 F. Supp. 3d at 538 (internal quotation and quotation marks omitted). "Coercive police activity is 'a necessary predicate' to finding that a waiver of Miranda rights was not voluntary." *Coronado v. Lefevre*, 748 F. Supp. 131, 139 (S.D.N.Y. 1990) (quoting *Colorado v. Connelly*, 479

U.S. 157, 167 (1986)). The key inquiry is whether "the defendant's will was overborne by the [law enforcement] agent's conduct." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). Voluntariness is assessed by looking to the totality of the circumstances. *See United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 40 (2d Cir. 1997).

Shah contends that the waiver of *Miranda* rights she concedes she signed was involuntary because 1) law enforcement supposedly misled her by telling her that they "just wanted to talk" to her, while their true purpose was to elicit incriminating statements from her, 2) she lacks experience and sophistication with the criminal justice system, 3) she was "confused and emotionally off-balance" at the time of the interrogation due to her misapprehension that an individual who had assaulted her in the past was somehow involved, and 4) she "was unable to read" the *Miranda* waiver she signed because she did not have her reading glasses and her contact lenses were blurry. (ECF No. 260 at 53-54; Shah Decl. ¶¶ 14, 20-21.)

Considering the totality of the above circumstances taken from the affidavits in the record, as well as the fact that the Court has listened to a recording of the interrogation, the Court finds that Shah's *Miranda* waiver was decidedly voluntary. First, Detective Bastos' statements to the effect that he "just wanted to talk to [Shah]" do not rise to the level of coercion because they were not misleading enough to cause Shah to believe she was only being detained for the purpose of providing information to law enforcement. (Shah Decl. ¶ 16.) Before Bastos drove Shah to ICE headquarters, he informed Shah that he had a warrant for her arrest. (*Id.* ¶ 13.) Because Bastos' actions, including taking Shah to an interrogation room at ICE headquarters and handcuffing her to a chair (*id.* ¶ 19), were sufficient to demonstrate to defendant that she was, in fact, under arrest, the circumstances of her interrogation fail to constitute police coercion, even considering her asserted inexperience with the criminal justice system. *See Illinois v. Perkins*, 496 U.S. 292, 100 (2d Cir. 1990) ("Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda's* concerns.").

Nor did Shah's difficulty reading due to the claimed dryness of her contact lenses affect the voluntariness of her waiver. In addition to showing Shah the *Miranda* waiver form, Bastos read each question aloud. (*See* ECF No. 290 Ex. 1, Recording of Mar. 30, 2021 Interrogation at 00:00:00-00:00:16.) Shah placed her initials next to each of her rights on the form to indicate she understood them. (*see Id.* Ex. 2.) She also signed the portion of the form stating: "I have read, or someone has read to me, this statement of my rights and I understand what my rights are, at this time I am willing to answer questions without a lawyer present." (*Id.*) Although Shah did tell the agent and Bastos that her contacts were blurry at some point *after* she signed the form, (*see id.* Ex. 1 at 00:03:00-00:06:04), both the Special Agent in attendance and Bastos allowed her to fix them before they began actually questioning her (*id.* at 00:03:00-000:06:04).

Finally, the Court finds that Shah's purported anxiety that the individual who had assaulted her in the past was implicated in the circumstances of her arrest did not factor into her mental state enough to overbear her will, especially considering that she did not

raise any concern that he was involved in the situation at any point during the interrogation. (*See* Shah Decl. ¶¶ 2-6, 1; *see generally* ECF No. 290 Ex. 1.) Shah's waiver of her *Miranda* rights was knowing and voluntary.

## G. Brewster and Shah's Requests to Compel Discovery of *Brady* and *Giglio* Material

Both Brewster and Shah seek to compel disclosure of *Brady* and *Giglio* material from the government in advance of trial. Under *Brady v. Maryland*, the government has a duty to disclose favorable evidence where "the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The government's duty under *Brady* "covers not only exculpatory material, but also information that could be used to impeach a key government witness." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). However, the Second Circuit has held that, "as a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *Coppa*, 267 F.3d at 146.

Because the government avers that it is aware of and in full compliance with its obligations under *Brady* and has made all required *Brady* disclosures, (*see* ECF No. 290 at 53-54; ECF No. 125 at 18), and because the Court has issued its oral and written notifications to counsel under Fed. R. Crim. P. 5(f) that confirms the parties' disclosure obligations and the possible consequences of violating those obligations, the Court denies Brewster and Shah's motions to compel immediate production of additional, unspecified *Brady* material. Moreover, *Giglio* requires disclosure of any materials that might be used to impeach Government witnesses "in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously." *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007). The Court denies Brewster and Shah's motion to compel discovery of *Giglio* material because the government avers that it will produce *Giglio* material substantially before trial. (*See* ECF No. 125 at 14; ECF No. 290 at 65-66.) The parties are directed to meet and confer on a schedule for the production of that material, including the disclosure of section 3500 material.

## H. Shah's Request to Compel the Post-arrest Statements of Co-defendant Stuart Smith

Shah also seeks to compel any post-arrest statements of her co-defendant and colleague Stuart Smith because she believes any statements may contain potential *Brady* and *Bruton* material. (ECF No. 260 at 46.) The Court denies this motion without prejudice. As to the contention that Smith's post-arrest statement may contain *Brady* material, Shah has conceded in her submission to the Court that the government has already provided the "five sets of statements from the interview" that the government believes may contain *Brady* material. (*Id.*) As to the contention that the post-arrest statement may contain *Bruton* material, the government asserts that it "does not anticipate it will seek to admit any

portion of Smith's post-arrest statement in [its] case-in-chief at the defendant's trial." (ECF No. 290 at 55; *see also United States v. Stein*, 424 F. Supp. 2d 720, 727 (S.D.N.Y. 2006) (finding that no specific discovery rule "require[s] the government to produce statements that might raise issues under *Bruton*").)

## II. CONCLUSION

For the reasons limned above and those set forth on the record at the July 23 oral argument, the omnibus motions are denied.

Dated:  New York, New York
            August 5, 2021

SO ORDERED:

Sidney H. Stein, U.S.D.J.