

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 3, 2021

**BY ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Jennifer Shah,* S4 19 Cr. 833 (SHS)

Dear Judge Stein:

    The Government respectfully submits this letter in opposition to defendant Jennifer Shah's letter motion dated November 30, 2021 (Dkt. 406 ("Mot.")).  For the following reasons, the motion should be denied.

    **I.**    **Factual Background**

    On November 29, 2021, a 48-minute Hulu Original one-episode show produced by ABC News Studios titled "The Housewife & the Shah Shocker" (the "Hulu Show") debuted on Hulu, a subscription-based streaming service.  On October 18, 2021, ABC News Studios requested from the United States Attorney's Office (the "Office") a copy of certain admitted Government exhibits from the trial in *United States v. Andrew Owimrin and Shahram Ketabchi*, S8 17 Cr. 243 (SHS). In accord with the Office's standard practice in responding to such requests from the press or public, the Office provided those materials, which are a matter of public record.  The Office declined to make any personnel available for interviews and declined to provide any comment.

    The Hulu Show included brief comments from, among many other individuals, the Acting Special Agent-in-Charge ("SAC") and a Supervisory Special Agent ("SSA") with Homeland Security Investigation's New York Field Office (together, the "HSI Officials").[1]  Government counsel in this case first became aware that the HSI Officials had participated in on-camera interviews in connection with the Hulu Show when a promotional video for the Hulu Show was

---

[1] The HSI Officials are not the primary case agents who are responsible for assisting with the investigation and prosecution of this case, but hold supervisory positions above those case agents.

posted online on November 18, 2021.  The Office has subsequently confirmed with HSI that, aside from the HSI Officials, no other HSI personnel participated in interviews for the Hulu Show.[2]

       The following is the entirety of the HSI Officials' statements that were included in the Hulu Show, listed in the order in which those comments appeared.  As is apparent from the comments themselves, almost all consisted of general statements about investigations into telemarketing fraud or specific comments about the predecessor case of *United States v. Ketabchi, et al.*, 17 Cr. 243 (SHS).  The comments were not presented back-to-back as they are below, but rather were interspersed with other content, including, among other things, excerpts of testimony and exhibits from the *Ketabchi* trial and interviews with an attorney who represented a defendant in the *Ketabchi* trial, victims of the telemarketing fraud scheme, the defendant's former employee, and the defendant's aunt and former classmate.

| | |
|---|---|
| SAC: | On any of our operations we don't look for specific timing to do arrests.  In the case of Jen Shah, she had a television crew that was following her on a regular basis, right.  So, it was not planned in any way.  Our investigators are Special Agents and needed to do our jobs and I'm happy to say they did it without incident and she was taken into custody. |
| SSA: | In January 2016, we started Operation Double Down, uh, based on an arrest made by the NYPD, um, for narcotics smuggling . . . the individual who was supplying the narcotics was also involved in a huge telemarketing fraud.[3] |
| SSA: | They would pass on what we call lead lists from one telemarketing floor to another. |
| SAC: | We constantly look at the lavish lifestyle that these fraudsters are living, and it hurts, it really does hurt because when you talk to a victim you see how everything they've worked for completely vanished it's disturbing and it's obviously why we do this job and we wanna make sure it stops. |
| SSA: | So, we just continued on with our investigation and we were able to identify other telemarketing floors in Nevada, Utah and Arizona, that were doing the same thing that they were doing here in New Jersey.  Except to our surprise, these people have been doing this for over ten years. |
| SAC: | The folks that are behind this are pros at what they do.  It is disgusting, and what we'd like to tell any victim is, it's not your fault, please come forward because we need your help to make sure this doesn't happen to more people. |
| SSA: | I don't think we do enough to make our public aware about the different types of schemes and frauds that are out there right now.  Especially during COVID, when |

---

[2] On September 29, 2021, Government counsel in this case learned that the SSA had participated in an off-the-record, background interview with ABC News Studios.

[3] This comment was immediately followed by displaying a photograph of Arash Ketabchi, to whom the SSA was referring.

| | |
|---|---|
| | people are home and they're on their computers and they're constantly answering the phones. And these perpetrators know that this is a prime time. |
| SAC: | When you talk to a victim and you see everything they've worked for, and then you see where these fraudsters are living the best lives they can live and not worrying about money in any kind of way. They don't have a problem sleeping at night. I have a problem sleeping at night. |
| SAC: | We are going to try our best to get as much of their money back as possible . . . Getting restitution for the victims is always our number one priority. |
| SSA: | The money that we seized and will continue to recover, is not even a fraction of what the victims have lost. Unfortunately, because these people live very lavish lifestyles, and able to hide their money overseas, there's a lot of countries that don't recognize money laundering as a crime, so we're not able to uh, seize that money. |

None of these quotations contained non-public information or opinion that would introduce a substantial likelihood of interfering with a fair trial or otherwise prejudice the due administration of justice. *See* Local Crim. R. 23.1(a).

## II.   The HSI Officials' Comments Did Not Violate Local Criminal Rule 23.1

### A. Applicable Law

Pursuant to Local Criminal Rule 23.1(a), "[i]t is the duty of . . . government agents . . . not to release or authorize the release of non-public information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."

"Statements concerning the following subject matters presumptively do not involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice within the meaning of [Local Criminal Rule 23.1]: . . . (3) The nature, substance or text of the charge, including a brief description of the offense charged;" and "(6) A request for assistance in obtaining evidence . . . ." Local Crim. R. 23.1(e).

### B. Discussion

The defendant argues, without quoting a single word uttered by the HSI Officials during their interviews for the Hulu Show, that their comments were violative of Local Criminal Rule 23.1(d)(7)[4] because they were "rife with statements of opinion as to [the defendant's] guilt

---

[4] Local Criminal Rule 23.1(d)(7) states that "[a]ny opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case" "presumptively involve[s] a substantial

3

and the merits and the evidence in the case." (Mot. 2.) As is evident from a review of the transcript of the HSI Officials' comments set forth above, this is a blatant mischaracterization and none of the comments come within the ambit of Local Criminal Rule 23.1(d)(7). The sole comment by the HSI Officials in the Hulu Show that was specific to the defendant was the SAC's benign statement about the defendant's arrest: "In the case of Jen Shah, she had a television crew that was following her on a regular basis, right. So, it was not planned in any way. Our investigators are Special Agents and needed to do our jobs and I'm happy to say they did it without incident and she was taken into custody." This comment is a far cry from one that would pose "a substantial likelihood" of "interfer[ing] with a fair trial or otherwise prejudice the due administration of justice." Local Crim. R. 23.1(a). This is particularly so because the circumstances of the defendant's arrest have already been the subject of widespread publicity by a television show on which the defendant was a cast member at the time of her arrest and on which she has continued to participate since her arrest, without any apparent concern that additional publicity of the circumstances of her arrest and the allegations against her may affect her ability to receive a fair trial. *See, e.g.*, Nicholas Rice, *RHOSLC: Homeland Security Searches for Jen Shah as the Ladies Prepare for Vail Getaway*, People, Nov. 7, 2021, https://people.com/tv/rhoslc-homeland-security-searches-for-jen-shah-as-ladies-prepare-for-vail-getaway/; Nicholas Rice, *RHOSLC: Jen Shah Reacts to Marketing Scam Accusations Against Her: It's 'Surreal'*, People, Nov. 21, 2021, https://people.com/tv/rhoslc-jen-shah-reacts-marketing-scam-accusations-against-her/.

The HSI Officials' general statements were not specific to the defendant. However, to the extent the defendant construes them to pertain to the defendant specifically, they relate to "[t]he nature" and "substance" of "the charge[s]" or constituted "[a] request for assistance in obtaining evidence," both of which are statements that "presumptively do not involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." Local Crim. R. 23.1(e)(3) & (6). For example, the SSA stated, describing the nature of the scheme charged, that "[t]hey would pass on what we call lead lists from one telemarketing floor to another." *See* Local Crim. R. 23.1(e)(3). In addition, the SAC solicited assistance from potential victims of the telemarketing fraud scheme: "what we'd like to tell any victim is, it's not your fault, please come forward because we need your help to make sure this doesn't happen to more people." *See* Local Crim. R. 23.1(e)(6). Neither of these statements pertained specifically to the defendant and, in any event, were within the presumptively permissible categories provided in Local Criminal Rule 23.1(e).[5]

Because no violation of Local Criminal Rule 23.1 occurred, no relief is warranted. The Office has been and remains committed to complying with Local Criminal Rule 23.1 and will take

---

likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice within the meaning of [Local Criminal Rule 23.1]."

[5] The defendant also complains about statements allegedly made nearly four months ago by an Assistant United States Attorney, who is not and never has been a member of the prosecution team in this case, to others in a private conversation at a restaurant. (Mot. 3.) Even assuming the accuracy of the defendant's claim, it is plain that a private conversation at a dinner table, even in a restaurant, is not something that "a reasonable person would expect to be disseminated by means of public communication," Local Crim. R. 23.1(a), and therefore cannot constitute a violation of Local Criminal Rule 23.1.

all necessary steps to ensure compliance by its law enforcement partners. *See United States v. Perryman*, No. 12 Cr. 123 (ADS), 2013 WL 4039374, at *13 (E.D.N.Y. Aug. 7, 2013) (denying motion to direct government and law enforcement partners to comply with Local Criminal Rule 23.1 where government "assure[d] the Court that, going forward, it 'will take [the] necessary steps to avoid further pre-trial publicity of this matter by communicating to local officials Rule 23.1'" (quoting government submission)). Although it is not needed because the Government has and will abide by Local Criminal Rule 23.1, to the extent the Court finds that some prophylactic measure is appropriate, the Government would have no objection to the Court entering an order directing the parties to comply with Local Criminal Rule 23.1.

### III. The Court Should Deny the Defendant's Request for Leave to File a Motion to Dismiss

#### A. Applicable Law

"[T]he exercise of a court's supervisory authority to dismiss an indictment is a 'drastic remedy' that should be utilized with caution and only in extreme cases." *United States v. Walters*, 910 F.3d 11, 26 (2d Cir. 2018) (quoting *United States v. Brown*, 602 F.2d 1073, 1076 (2d Cir. 1979)). "[A]s a general matter, adverse pretrial publicity is not a sufficient ground to dismiss an indictment." *United States v. Woodberry*, --- F. Supp. 3d ----, No. 20 Cr. 31 (DLI), 2021 WL 2716508, at *6 (E.D.N.Y. Jul. 1, 2021) (citing cases). Indeed, "even publicity partly engendered by the Government would not warrant the extreme remedy of dismissal of an indictment before a *voir dire*." *United States v. Curcio*, 712 F.2d 1532, 1544 (2d Cir. 1983); *see also United States v. Hoffa*, 156 F. Supp. 495, 499-500 (S.D.N.Y. 1957) (denying motion to dismiss on the basis of pretrial publicity and holding that "the defendants' constitutional rights to a trial by a fair and impartial jury will be protected by the proper utilization of the *voir dire*").

#### B. Discussion

The defendant's request for leave to file a motion to dismiss, which cites no legal authority, should be denied because the defendant has not and cannot demonstrate any likelihood of success on the merits of any such motion.

*First*, the dismissal of an indictment under the Court's supervisory authority is a "drastic remedy that is rarely used," *United States v. Silver*, 103 F. Supp. 3d 370, 376 (S.D.N.Y. 2015) (internal quotation omitted); *see also United States v. Fields*, 592 F.2d 638, 647 (2d Cir. 1978) (noting that dismissal of an indictment is an "extreme sanction"), and courts have recognized that prejudicial pretrial publicity is not an appropriate basis to grant such a remedy, *see, e.g.*, *Silver*, 103 F. Supp. 3d at 376 (denying motion to dismiss based on allegedly prejudicial pretrial publicity and explaining that "even if the U.S. Attorney's extrajudicial comments violated applicable disciplinary or ethical rules (and the Court is not saying they did), that alone would be insufficient grounds to dismiss the Indictment").

*Second*, the defendant has not and cannot demonstrate that the comments made by the HSI Officials violated Local Criminal Rule 23.1. As explained above, none of the statements consisted of "non-public information or opinion" for which there was "a substantial likelihood" that

"dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." Local Crim. R. 23.1(a). *See, e.g.*, *Woodberry*, 2021 WL 2716508, at *6-7 (finding alleged violations of Local Crim. R. 23.1 were unfounded and denying motion to dismiss).

*Third*, the defendant has not and cannot establish that she will be prejudiced at trial by the HSI Officials' comments in the Hulu Show, which were only a brief portion of the 48-minute show that also featured, among other things, interviews with the defendant's aunt and a former classmate. *See, e.g.*, *United States v. Capra*, 501 F.2d 267, 278-79 (2d Cir. 1974) (affirming denial of motion to dismiss an indictment for lack of established prejudice though members of the press were permitted to attend pre-arrest briefings of the police as well as accompany the police to the defendant's house on the night of his arrest); *United States v. Skelos*, No. 15 Cr. 317 (KMW), 2018 WL 2849712, at *10 (S.D.N.Y. June 8, 2018) ("Although it is generally inappropriate for the Government to make extrajudicial statements about guilt (*see* S.D.N.Y. Local Crim. R. 23.1(d)(7)), these statements were not so prejudicial or widely disseminated that they will prevent Defendants from receiving a fair trial in this district. Instead, it is highly likely that the Court will be able to find jurors who have not been prejudiced by (or even heard of) these statements."); *United States v. Corbin*, 620 F. Supp. 2d 400, 412 (E.D.N.Y. 2009) (denying motion to dismiss complaint because "whatever negative pretrial publicity has been generated in this case, and whatever violation of the disciplinary rules may have occurred, the defendant has failed to show a widespread public perception of his guilt").

In any event, the defendant's public profile and her appearance on television with one of her criminal defense attorneys, during which the defendant and her attorney discussed the pending charges and the circumstances of her arrest, already renders this a case in which a thorough *voir dire* will be required. *See* Paul Chavez, *Real Housewives of Salt Lake City: Jen Shah Tearfully Shares Bizarre Story About Arrest With Lawyer*, Daily Mail, Nov. 22, 2021, https://www.dailymail.co.uk/tvshowbiz/article-10229097/Real-Housewives-Salt-Lake-City-Jen-Shah-tearfully-shares-bizarre-story-arrest-lawyer.html.[6] The same *voir dire* procedures that would have been necessary even if the Hulu Show had not included comments from the HSI Officials will be more than adequate to address any potential prejudice. *See, e.g.*, *Skelos*, 2018 WL 2849712, at *10 ("[T]he acting U.S. Attorney claimed there was 'overwhelming evidence of Dean Skelos and Adam Skelos's guilt' and remarked that '[c]leaning up corruption is never easy'"; the court concluded that "it is highly likely that [it would] be able to find jurors who have not been prejudiced by . . . these statements[.]"); *United States v. Gotti*, No. 04 Cr. 690 (SAS), 2004 WL 2757625, at *4 (S.D.N.Y. Dec. 3, 2004) ("A *voir dire* that focuses on screening out those veniremen who . . . have been influenced by [a potential witness's statements regarding the defendant] can adequately ensure that an impartial jury is selected . . . . Any residual taint can be cured by carefully admonishing the jury not to consider extrajudicial statements.").[7]

---

[6] The defendant's efforts to garner publicity also weigh heavily against the merits of any potential motion to dismiss. *See, e.g.*, *Corbin*, 620 F. Supp. 2d at 412 (denying motion to dismiss where "much of the press and publicity surrounding this case was generated by the defendant and his counsel").

[7] The defendant, without citation to any legal authority, requests that the Court permit "discovery" and an "evidentiary hearing" regarding, among other things, "the participation and direction of the USAO in preparing the [Hulu Show], and who approved the appearance of [the HSI Officials] on

**IV.     Conclusion**

For the foregoing reasons, the motion should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: *Robert B. Sobelman*
Kiersten A. Fletcher
Robert B. Sobelman
Sheb Swett
Assistant United States Attorneys
(212) 637-2238 / 2616 / 6522

Cc: Priya Chaudhry, Esq. (by ECF)
   Beth M. Farber, Esq. (by ECF)
   Seth J. Zuckerman, Esq. (by ECF)
   Shaelyn Gambino-Morrison, Esq. (by ECF)

---

the [Hulu Show]." (Mot. 3.) Because the defendant cites no legal authority, it is unclear what legal standard might apply to such an extraordinary request. In any event, the defendant's request should be rejected under any standard that may apply. In light of the lack of any violation of Local Criminal Rule 23.1 and her failure to show that any other potential relief is warranted, as well as the representations by Government counsel in this case regarding their lack of involvement with the HSI Officials' interviews for the Hulu Show, the defendant has failed to establish any entitlement to such unusual procedures.