UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------------ x

UNITED STATES OF AMERICA,

              Plaintiff,

    - against -

JENNIFER SHAH, et al.,

              Defendants.

------------------------------------------------------------------ x

Case No. 1:19-cr-833 (SHS)

Hon. Sidney H. Stein

ECF Case

**ORAL ARGUMENT REQUESTED**


## MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY AMERICAN
## BROADCASTING COMPANIES, INC.'S MOTION TO QUASH SUBPOENA


DAVIS WRIGHT TREMAINE, LLP

Nathan Siegel
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Tel.: (212) 489-8230
Fax: (212) 489-8340
nathansiegel@dwt.com

*Attorneys for Non-Party*
*American Broadcasting Companies, Inc.*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

A.     The ABC News Documentary ...................................................................................... 2

B.     Defendant Seeks Discovery Related to The Program From the Government .............. 4

C.     The Subpoena................................................................................................................. 5

ARGUMENT ............................................................................................................................. 6

I.      THE SUBPOENA SHOULD BE QUASHED BECAUSE DEFENDANT
CANNOT SATISFY HER BURDEN TO OVERCOME THE
JOURNALIST'S PRIVILEGE ...................................................................................... 6

      A.     The Journalist's Privilege Protects the Information Sought by
Defendant's Subpoena ..................................................................................... 6

      B.     Defendant Cannot Satisfy Her Burden to Overcome the Journalist's
Privilege ........................................................................................................... 8

            1.     Defendant Cannot Show That ABC News's Records Would
be Likely Relevant to a Significant Issue ........................................... 10

            2.     Defendant Cannot Show That the Information She Seeks Is
Otherwise Unavailable....................................................................... 13

II.     THE SUBPOENA SHOULD ALSO BE QUASHED PURSUANT TO
RULE 17(c)(2) .......................................................................................................... 14

CONCLUSION......................................................................................................................... 18

i

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Baker v. F & F Inv.*,
470 F.2d 778 (2d Cir. 1972)...................................................................................................6

*In re Behar*,
779 F. Supp. 273 (S.D.N.Y. 1991) .......................................................................................13

*Bowman Diary Co. v. United States*,
341 U.S. 214 (1951)..............................................................................................................16

*Carey v. Hume*,
492 F.2d 631 (D.C. Cir. 1974)..............................................................................................13

*Carter v. City of New York*,
No. 02 Civ. 8755 (RJH), 2004 WL 193142 (S.D.N.Y. Feb. 2, 2004) ....................................10

*Chevron Corp. v. Berlinger*,
629 F.3d 297 (2d Cir. 2011)....................................................................................................7

*In re Consumers Union of U.S., Inc.*,
495 F. Supp. 582 (S.D.N.Y. 1980) .........................................................................................8

*Gonzales v. NBC*,
194 F.3d 29 (2d Cir. 1999)............................................................................................ *passim*

*Lonegan v. Hasty*,
No. CV-04-2743(NG)(VVP), 2008 WL 41445 (E.D.N.Y. Jan. 1, 2008) ...............................7, 8

*In re McCray, Richardson, Santana, Wise, & Salaam Litig.*,
928 F. Supp. 2d 748 (S.D.N.Y.), *aff'd*, 991 F. Supp. 2d 464 (S.D.N.Y. 2013)............6, 7, 9, 13

*New England Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.*,
No. 14 Misc. 59, 2014 WL 1567297 (S.D.N.Y. Apr. 17, 2014)..........................................10, 13

*In re Pan Am Corp.*,
161 B.R. 577 (S.D.N.Y. 1993)..............................................................................................14

*In re Petroleum Prods. Antitrust Litig.*,
680 F.2d 5 (2d Cir. 1982)........................................................................................................8

*Sikelianos v. City of New York*,
No. 05 Civ. 7573 (RJS)(JCF), 2008 WL 2465120 (S.D.N.Y. June 18, 2008).....................9, 10

4869-5570-5359v.4 -

*In re Subpoena to Jesse Eisinger,*
No. 09-10053-PBS, 2011 WL 1458230 (S.D.N.Y. Apr. 12, 2011), *aff'd sub
nom. Baker v. Goldman Sachs & Co.*, 669 F.3d 105 (2d Cir. 2012) ........................................11

*The New York Times v. Gonzales,*
459 F.3d 160 (2d Cir. 2006).....................................................................................................15

*United States v. Avenatti,*
No. (S1) 19 Cr. 373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020).........................15, 16

*United States v. Barnes,*
560 F. App'x 36 (2d Cir. 2014) ...............................................................................................14

*United States v. Blakstad,*
No. 19 Cr. 486 (ER), 2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) ...........................................16

*United States v. Burke,*
700 F.2d 70 (2d Cir. 1983).....................................................................................................6, 9

*United States v. Cherry,*
876 F. Supp. 547 (S.D.N.Y. 1995) .....................................................................................15, 16

*United States v. Cole,*
No. 19 CR. 869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) ..................................12, 16

*United States v. Columbo,*
No. 04 CR. 273 (NRB), 2006 WL 2012511 (S.D.N.Y. July 18, 2006).....................................17

*United States v. Cutler,*
6 F.3d 67 (2d Cir. 1993)...........................................................................................................11

*United States v. Ketabchi, et al.,*
Case No. 17cr-243 (SHS) ...........................................................................................................3

*United States v. Marchisio,*
344 F.2d 653 (2d Cir. 1965), *superseded by statute on other grounds, as noted
in U.S. v. Mandanici*, 205 F3d 519 (2d Cir. 2000) ..................................................................16

*United States v. Marcos,*
No. SSSS 87 Cr. 598(JFK), 1990 WL 74521 (S.D.N.Y. June 1, 1990) ...................................12

*United States v. Markiewicz,*
732 F. Supp. 316 (N.D.N.Y. 1990)............................................................................................7

*United States v. Mendinueta-Ibarro,*
956 F. Supp. 2d 511 (S.D.N.Y. 2013)......................................................................................17

iii

*United States v. Nixon,*
   418 U.S. 683 (1974)...................................................................................................................15

*United States v. Noriega,*
   764 F. Supp. 1480 (S.D. Fla. 1991) .......................................................................................17

*United States v. Percoco,*
   No. 16-CR-776 (VEC), 2018 WL 9539131 (S.D.N.Y. June 14, 2018)....................................14

*United States v. RW Prof'l Leasing Servs. Corp.,*
   228 F.R.D. 158 (E.D.N.Y. 2005)............................................................................................16

*United States v. Treacy,*
   603 F. Supp. 2d 670 (S.D.N.Y. 2009), *aff'd in relevant part,* 639 F.3d 32 (2d
   Cir. 2011)...............................................................................................................................7, 8

*United States v. Weissman,*
   01-CR-529, 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) ...................................................15

**Rules**

Federal Rules of Criminal Procedure
   Rule 16....................................................................................................................................12, 16
   Rule 17.................................................................................................................................... *passim*
   Rule 17(c)............................................................................................................................1, 15, 16
   17(c)(2) ...............................................................................................................................1, 14, 17

Local Criminal Rule 23.1............................................................................................................4

Non-party American Broadcasting Companies, Inc. ("ABC News") submits this memorandum of law in support of its motion, pursuant to Federal Rule of Criminal Procedure 17(c)(2),[1] to quash the subpoena to produce documents, information, or objects issued upon it by Defendant Jennifer Shah ("Defendant"). This Subpoena, a copy of which is attached as Exhibit B to the Declaration of Eileen Murphy accompanying this memorandum, should be quashed because (1) it seeks unpublished information in connection with an ABC News documentary report that is protected by the journalist's privilege, and/or (2) it independently fails to satisfy the requirements of Rule 17 for subpoenas to non-parties.

## PRELIMINARY STATEMENT

On November 29, 2021, ABC News released a 48-minute documentary on Hulu called, "The Housewife and the Shah Shocker" (the "Documentary" or "Program"). Much of the Documentary discussed the Defendant's background as a reality television celebrity and cast member of the television series "The Real Housewives of Salt Lake City," and included interviews with persons such as Defendant's former employee, aunt, childhood friend, fans, and multiple pop culture journalists and commentators. The Documentary also described the background of telemarketing scams in general, a prior criminal case that preceded the investigation of the Defendant, and towards the end of the Documentary it reported about the instant case. The Documentary also included interviews with telemarketing fraud victims, criminal defense attorneys who have represented clients in other cases of alleged fraud, and two investigators from the Department of Homeland Security.

---

[1] Rule 17(c) of the Federal Rules of Criminal Procedure provides that a subpoena may be quashed or modified "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

1

This is not the first time the Defendant has sought discovery related to the Documentary. Previously the Defendant sought discovery from the Government in connection with the two government investigators who are interviewed in the Documentary, which this Court denied. Nonetheless, the Defendant subsequently issued a Subpoena to non-party ABC News whose scope is even broader – vastly so – than the information she had unsuccessfully sought from the Government. The Subpoena seeks seven sweeping categories of records in ABC News's possession related to the Documentary, including all video footage – whether broadcast or not – and all documents concerning the dozens of interviews taken for the Program, including all unpublished reporter notes and internal communications.

The Subpoena is a classic example of why this jurisdiction recognizes a robust privilege to prevent newsgatherers from being dragged into criminal matters as the subject of fishing expeditions every time they report on ongoing, high-profile prosecutions. Defendant cannot make the showing required in this Circuit to overcome the journalist's privilege, and the Subpoena should therefore be quashed. Moreover, even in the absence of a journalist's privilege, the subpoena should be quashed pursuant to Rule 17 because it is unreasonable, oppressive and highly unlikely to yield any admissible evidence.

## BACKGROUND

### A.    The ABC News Documentary

The Documentary was investigated and produced by ABC News Studios, which is a division of ABC News that produces long-form documentaries. Declaration of Eileen Murphy ("Murphy Decl."), ¶ 1. The investigation and production of the Documentary involved a team of about 20 journalists who were supervised by a veteran professional journalist with almost three decades of experience. Several ABC News correspondents also participated in on-air reporting about or commenting on events and persons described in the program. *Id.* ¶ 3. The process of

2

gathering information and producing the Documentary took place over a period of about four months. *Id.*

In creating this documentary, ABC News reporters interviewed and gathered information from dozens of sources, and the Documentary itself includes excerpts of on-camera interviews with almost 20 persons. *Id.* ¶ 4. ABC News also spoke to more than a dozen other sources "on background," which means that they requested that their identities be confidential and that they not be quoted directly. *Id.* ABC News did not speak to any prosecutors involved in this case. *Id.*

The 48-minute documentary, which is available on Hulu under the title "The Housewife & the Shah Shocker", covers a variety of topics. Most of the first portion of the Documentary covers Ms. Shah's background and her prominence in pop culture as a reality television personality. It includes excerpts of interviews with multiple authors and journalists who cover pop culture, a self-designated "super fan" of the *Real Housewives* franchise, a former cast member of another *Real Housewives* program, Ms. Shah's aunt, a former childhood classmate, and her former fashion designer.

The Documentary then reports about how common telemarketing fraud scams work in general. In describing these scams, the Documentary discussed a prior, related narcotics investigation that led prosecutors to discover this alleged telemarketing scam: *United States v. Ketabchi, et al.*, Case No. 17cr-243 (SHS). The Documentary included excerpts from interviews with several criminal defense attorneys who have represented clients charged in such cases, several other attorney-commentators, journalists who have covered such proceedings, two victims of such scams who are not alleged to be part of the Government's case against the

3

Defendant, and two investigators from the Homeland Security Investigation's New York Field Office. Murphy Decl., Ex. A.[2]

Finally, the Documentary describes Defendant's March 2021 arrest and criminal charges. It includes excerpts of interviews with some of the same journalists and attorneys, as well as Ms. Shah's aunt, commenting on the case and its possible defenses and outcomes. *Id.*

## B.   Defendant Seeks Discovery Related to The Program From the Government

The day after the Documentary appeared on Hulu, Defendant submitted a letter motion to the Court seeking several types of relief for what she alleged was "the Government's flagrant violation of Local Criminal Rule 23.1." Dkt. 406. Defendant argued that the Government had violated local rules by allowing the two HSI investigators to give interviews in connection with the Program. Dkt. 406 at 1. Among other relief, Defendant sought "discovery regarding the extent and nature of the prosecutorial team's collaboration with ABC News and other media outlets in an attempt to poison the jury pool," and "an evidentiary hearing to determine the extent and nature of the Government's collaboration with ABC News." Dkt. 406 at 1. The Government opposed via letter motion dated December 3, 2021 (Dkt. 409), and Defendant replied on December 6 (Dkt. 410).

On December 10, 2021, this Court denied Defendant's letter motion in full, finding that "there has been no evidence whatsoever proffered to suggest that Shah's right to a fair trial has been compromised or prejudiced in any respect" by the interviews featured in the Program.

---

[2] The HSI investigators focused on telemarketing fraud prosecution generally and did not comment on Defendant's case other than a single statement regarding the timing of Defendant's arrest. *See* Dkt. 409 at 2 (listing all HSI investigators' statements in the Documentary, including: "On any of our operations we don't look for specific timing to do arrests. In the case of Jen Shah, she had a television crew that was following her on a regular basis, right. So, it was not planned in any way. Our investigators are Special Agents and needed to do our jobs and I'm happy to say they did it without incident and she was taken into custody.").

4

Dkt. 418 at 1. The Court recognized that the HSI Officials' statements in the Program "are largely statements about telemarketing fraud overall, with general references to the lifestyles of the persons involved and a Homeland Security investigation into telemarketing floors." Dkt. 418 at 1.

## C.   The Subpoena

On February 11, 2022, Defendant caused the Subpoena to be served on ABC News. *See* Murphy Decl. ¶ 6 & Ex. B. The Subpoena seeks seven sweeping categories of information, including:

1. *All* video footage "made or used in conjunction with the Program," including raw footage and unaired footage;

2. *All* "documents and communications" between ABC News and "any member of the Prosecution Team" regarding the Program;

3. "Identification" of all "members" of the "Prosecution Team" who provided information to ABC News "in connection with" the Program;

4. *All* "releases, waivers, or other documentation" provided to *any* "individual who appeared on the Program";

5. *All* video footage "concerning Defendant Jennifer Shah filmed in preparation for the Program";

6. *All* "documents and communications concerning" all the interviews "taken for the Program," including unpublished journalistic work product such as interviewer notes and "internal memoranda";

7. *All* "documents and communications" between ABC News and "any employee or representative of" four specified companies "concerning the Program," whether or not those communications refer to Defendant.

*See* Murphy Decl., Ex. B. The return date on the Subpoena was February 22, 2022, a month prior to the current date the trial of this case is scheduled to commence. *Id.* After ABC News' counsel conferred with Defendants' counsel concerning its objections to the Subpoena, the parties agreed that ABC News would have until February 25, 2022 to file any motion to quash it.

5

## ARGUMENT

## I. THE SUBPOENA SHOULD BE QUASHED BECAUSE DEFENDANT CANNOT SATISFY HER BURDEN TO OVERCOME THE JOURNALIST'S PRIVILEGE

### A. The Journalist's Privilege Protects the Information Sought by Defendant's Subpoena

The material sought by the Subpoena is squarely protected from compelled disclosure by the journalist's privilege. As the Second Circuit has long and consistently recognized, requiring journalists to testify about their newsgathering and reporting would pose a grave harm to the interests served by the First Amendment. *See, e.g.*, *Baker v. F & F Inv.*, 470 F.2d 778, 782 (2d Cir. 1972); *Gonzales v. NBC*, 194 F.3d 29, 35 (2d Cir. 1999). Accordingly, courts recognize a reporter's privilege, which reflects the "'paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters.'" *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983) (*quoting Baker*, 470 F.2d at 782).

This privilege applies with full force in criminal matters, just as it does in civil matters. Indeed, "the important social interests in the free flow of information that are protected by the reporter's qualified privilege are particularly compelling in criminal cases." *Id.* In the criminal context, the reporter's privilege prevents parties from sifting through media records in the hope that might elicit some material that might enhance their case. *Burke*, 700 F.2d at 76-78 (affirming district court's refusal to review news media's records *in camera* to determine if they would aid defendant charged with conspiracy in impeaching key witness). In short, the privilege allows the news media to remain independent, neutral, and vigorous when reporting on criminal matters. *See In re McCray, Richardson, Santana, Wise, & Salaam Litig.*, 928 F. Supp. 2d 748, 754 (S.D.N.Y.), *aff'd*, 991 F. Supp. 2d 464 (S.D.N.Y. 2013) (privilege "is designed to insure 'a

vigorous, aggressive, and independent press.'") (quoting *Chevron Corp. v. Berlinger*, 629 F.3d 297, 307 (2d Cir. 2011)).

The privilege clearly applies to news outlets like ABC News, and to documentaries like the one here which simply report news and information in a longer format than the typical nightly or weekly news program. The privilege applies so long as "disseminat[ing] the information motivated the gathering of the information," and the news outlet was not "commissioned to publish in order to serve the objectives of others who have a stake in the subject of the reporting." *Berlinger*, 629 F.3d at 307-08. Because ABC News created the Program for the purpose of public dissemination, and was in no way "commissioned" by Defendant or the prosecutors to produce the Program, it clearly qualifies for the privilege. *See, e.g., In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d at 468 (privilege covered audio and video outtakes from documentary regarding plaintiffs' experiences); *Lonegan v. Hasty*, No. CV-04-2743(NG)(VVP), 2008 WL 41445, at *2 (E.D.N.Y. Jan. 1, 2008) (granting in large part the motion for a protective order by *The New York Times* and its reporter, while also severely restricting a subpoena served on Amnesty International USA and its investigator).

It is equally well established in the Second Circuit that this privilege protects against compelled disclosure of both confidential and non-confidential, as well as "published and unpublished information." *United States v. Treacy*, 603 F. Supp. 2d 670, 672 (S.D.N.Y. 2009), *aff'd in relevant part*, 639 F.3d 32, 43 (2d Cir. 2011); *see also United States v. Markiewicz*, 732 F. Supp. 316, 319 (N.D.N.Y. 1990). The Second Circuit has held that "in instances where a reporter is not protecting a confidential source or confidential materials, the showing required to overcome the journalist's privilege is the same in a criminal case as it is in a civil case … and that this is true whether the party seeking to overcome the privilege is the prosecution or the

defense." *Treacy*, 639 F.3d at 43; *see also Lonegan*, 2008 WL 41445, at *2 ("Where non-confidential information is involved, the damage [to a free press] is ... no less real. Requiring journalists and press organizations to respond to subpoenas on a regular basis, even when the requested documents and testimony concern non-confidential matters, imposes costs in time and money that would unnecessarily burden reporters and their employers.").

In short, allowing defendants to compel documentarians to disclose *any* newsgathering information would place "a significant burden" on the press's ability to provide "coverage of provocative issues important to the public." *In re Consumers Union of U.S., Inc.*, 495 F. Supp. 582, 586 (S.D.N.Y. 1980). To protect the free flow of news to the public, the Second Circuit has held that the privilege bars compelled disclosure of information and communications made or obtained in the course of gathering and reporting the news, unless the party seeking disclosure makes a rigorous showing – one that Defendant cannot make here.

## B.     Defendant Cannot Satisfy Her Burden to Overcome the Journalist's Privilege

A party demanding the production of nonconfidential information obtained through newsgathering bears a heavy burden to overcome the journalist's privilege. Defendant must show "that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable through other available sources." *Gonzales*, 194 F.3d at 36; *see also Treacy*, 639 F.3d at 43 (adopting *Gonzales* test for criminal actions). The burden to obtain confidential source information, which the Subpoena seeks in part, is even higher.[3] As a result,

---

[3] To the extent that the Subpoena seeks information that was provided to ABC News in confidence, which it does, the Second Circuit has set out an even more stringent three-part test such that disclosure may be compelled "only upon a clear and specific showing that the information is: [1] highly material and relevant, [2] necessary or critical to the maintenance of the claim, and [3] not obtainable from other available sources." *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982). *See also Treacy*, 639 F.3d at 42 (holding that the same three-part test applies to confidential source information sought in criminal cases). Since ABC News

courts in this jurisdiction have regularly applied the qualified journalists' privilege in cases where a criminal defendant seeks information from a third-party newsgatherer and found that the privilege defeats the demand for disclosure.

For example, in *United States v. Burke*, a criminal defendant facing conspiracy charges sought to obtain documents and tapes in the possession of Sports Illustrated ("SI") in connection with an article by Henry Hill. The article purported to describe Hill's first-hand account of the very scheme that was at the center of defendant's conviction, and Hill was called to testify on the same topic. 700 F.2d at 76. The defendant argued that "Hill's testimony was the *sine qua non* of the government's case against him," and thus urged the Second Circuit to find that the trial court had committed reversible error when it refused to review the newsgathering materials in camera "to determine if they would have ... enhanced his chances for acquittal." *Id.* The Second Circuit rejected this approach, finding that the privilege applied to SI's records, and that the defendant failed to overcome the privilege because any impeachment evidence would be merely cumulative of other evidence in the case. *Id.* at 76-77.

In *In re McCray, Richardson, Santana, Wise, & Salaam Litig.*, members of the Central Park Five sought to compel the production of unaired audio and video recordings from the producers of a documentary as part of their lawsuit against New York City. The court quashed the subpoena under the reporter's privilege as articulated in *Gonzales*, stating that the parties seeking disclosure "point to no particular interview or outtake that would provide the evidence they seek," but rather that they "only make general claims that the [sought-after information is] likely to contain relevant material." 991 F. Supp. 2d at 470.

_____

does not believe that Defendant can make the requisite showing to compel disclosure of nonconfidential information, Defendant would clearly fail to overcome the privilege with respect to confidential information as well.

4869-5570-5359v.4 -

Likewise, in *Sikelianos v. City of New York*, No. 05 Civ. 7673(RJS)(JCF), 2008 WL

2465120 (S.D.N.Y. June 18, 2008), a protester arrested at the 2004 Republican National

Convention served a subpoena on the Associated Press, seeking unpublished photographs from

the day in question, and the court granted AP's motion to quash because the disclosure-seeking

party "failed to make the necessary showing to overcome the [qualified journalist's] privilege."

*Id.* at *1. *See also Carter v. City of New York*, No. 02 Civ. 8755 (RJH), 2004 WL 193142, at *1

(S.D.N.Y. Feb. 2, 2004) (denying attempt by a group of firefighters suing New York City over

arrests at a union demonstration sought to compel the testimony of a reporter who had been

present at the event); *New England Teamsters & Trucking Indus. Pension Fund v. N.Y. Times

Co.*, No. 14 Misc. 59, 2014 WL 1567297, at *5 (S.D.N.Y. Apr. 17, 2014) (denying plaintiff's

motion to compel documents from *The New York Times* concerning its investigation of a hospital

chain involved in lawsuit, noting that "[m]ere belief that an alternative source is unwilling to

provide the information, without more, cannot compel a finding that information is not

reasonably obtainable.").

As these cases demonstrate, a party's failure to demonstrate sufficient relevance to a

significant issue and absolute unavailability of that information from elsewhere will defeat its

demand for disclosure. Here, Defendant cannot make the necessary showing of either element.

## 1. Defendant Cannot Show That ABC News's Records Would be Likely Relevant to a Significant Issue

This Court should quash the Subpoena because Defendant cannot show how the

Subpoena will provide her with any evidence to support her defense—let alone material that is

*likely* relevant to a *significant* issue in her case.

Typically, in cases where the journalist's privilege was overcome, the material sought by

the subpoena was found relevant because it portrayed the alleged crime or tort itself. In

10

*Gonzales*, for example, the video at issue actually showed a defendant police officer during a car stop, which was directly relevant to the plaintiffs' claim that the officer was engaged in a pattern and practice of violating the civil rights of Hispanic drivers who were stopped without probable cause. 194 F.3d at 31; *see also United States v. Cutler*, 6 F.3d 67, 73 (2d Cir. 1993) (affirming that journalists' privilege was overcome where the video contained outtakes from the very statements for which the defendant was charged with contempt).

Here, by contrast, the Program was created months after the alleged conduct underlying the criminal charges, and Defendant cannot seriously argue that it depicts her actually engaging in any of the alleged activity at all, let alone in some manner that could exonerate her. Moreover, the Documentary does not even purport to interview anyone in any capacity as a witness in this case. Rather, the program consists of multiple interviews with persons such as pop culture fans and commentators, journalists, reality television cast members, and attorneys not involved in this case who offer general commentary about this and other analogous cases. There is no indication that any, let alone all, of the unpublished portions of such interviews and all of the journalistic work product created by ABC New journalists are likely relevant to a significant issue in this case. *See In re Subpoena to Jesse Eisinger*, No. 09-10053-PBS, 2011 WL 1458230, at \*4 (S.D.N.Y. Apr. 12, 2011) (applying a qualified privilege, noting that "[p]laintiffs can point to no required element of [its] claims dependent upon [the journalist's] testimony," and stating that the "Court is even doubtful [the journalist's] testimony would be relevant to Plaintiffs' claims."), *aff'd sub nom. Baker v. Goldman Sachs & Co.*, 669 F.3d 105 (2d Cir. 2012).[4]

---

[4] The irrelevance of the material sought by the Subpoena is underscored by the fact that Defendant was aware of the Program as soon as it aired (Dkt. 406 at 1), yet chose not to serve this Subpoena until several months later. Murphy Decl., Ex. B. If the Program's underlying

That conclusion is especially warranted here because the Defendant had already sought and been denied discovery regarding a much narrower subset of information related to the Program than the Subpoena seeks here. The Documentary only contains interviews with two government employees, and as this Court found those interviews consist of "statements about telemarketing fraud overall, with general references to the lifestyles of the persons involved and a Homeland Security investigation into telemarketing floors." Dkt. 418 at 1. The Defendant argued that information about communications with ABC News would be relevant to the issue of her right to receive a fair trial, but the Court found that "there has been no evidence whatsoever proffered to suggest that Shah's right to a fair trial has been compromised or prejudiced in any respect" by the interviews featured in the Program. Dkt. 418 at 1.

There can therefore be no basis for the Defendant to seek not only that same information, but a far broader corpus of information from a third-party that, unlike the Government, is protected by the journalist's privilege. The Subpoena cannot be used as an end-run around this Court's prior discovery ruling because "Rule 17 is not a method of discovery that supplements Rule 16." *United States v. Cole*, No. 19 Cr. 869 (ER), 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021) (internal quotes omitted). Clearly, if Defendant's argument as to the relevance of a small subset of the Documentary's interviews is not enough to support regular discovery, it also cannot overcome the much higher threshold of a third-party's constitutional privilege.

Allowing Defendant to sift through virtually all of the footage, documents, and communications underlying the Program will have exactly the effect courts seek to avoid, by allowing a party to use the independent press as an extension of her defense team. *See, e.g.*, *Gonzales*, 194 F.3d at 35 ("permitting litigants unrestricted, court-enforced access to journalistic

_____

material were critical to Defendant's case, surely she would have acted sooner.

4869-5570-5359v.4 -

resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties"); *United States v. Marcos*, No. SSSS 87 Cr. 598(JFK), 1990 WL 74521, at *3 (S.D.N.Y. June 1, 1990) ("Many doors will be closed to reporters who are viewed as investigative resources of litigants. The hindrance to the free flow of information which accompanies this perception is inimical to the First Amendment."). Quashing this Subpoena is therefore warranted to uphold the policies furthered by the journalist's privilege and the concomitant right of newsgatherers like ABC News to perform their function to inform the public about events of wide public interest.

## 2. Defendant Cannot Show That the Information She Seeks Is Otherwise Unavailable

The Subpoena must be quashed for its irrelevance alone, so the Court need not reach the second step of the *Gonzales* analysis, let alone the even more rigorous test applied to confidential source information. However, Defendant fails at this step too, because she cannot show that the information sought by the Subpoena is "not reasonably obtainable through other available sources." *Gonzales*, 194 F.3d at 36.

Courts in this Circuit have required a party seeking even nonconfidential information to "make reasonable efforts through discovery to obtain the information from alternative sources to defeat the privilege." *New England Teamsters*, 2014 WL 1567297, at *4. "Exhaustion of all other available sources of information is sometimes required." *Id.* (citing *In re NBC*, 79 F.3d 346, 353 (2d Cir. 1996)); *accord In re Behar*, 779 F. Supp. 273, 276 (S.D.N.Y. 1991) (finding that the party seeking information "has not shown that it has exhausted the avenues open to it" and accordingly granting reporter's motion to quash a deposition); *In re McCray*, 928 F. Supp. at 758 ("Defendants have failed to establish that the information sought is not obtainable elsewhere"). Indeed, the Second Circuit held in one case that "even though 100 witnesses had

13

been deposed, that was not sufficient to establish exhaustion." *New England Teamsters*, 2014 WL 1567297, at \*4 (citing *Petroleum Prods.*, 680 F.2d at 9); *accord Carey v. Hume*, 492 F.2d 631, 638 (D.C. Cir. 1974) (60 depositions may be appropriate before compelling reporter to testify). Or, as the court put it in *In re Pan Am Corp.*, 161 B.R. 577 (S.D.N.Y. 1993), "At the very least, a party seeking to overcome a constitutional privilege on the basis of necessity must show that it has exhausted all other available non-privileged sources for the information. Here, [the subpoenaing party] has not even worked up a sweat, much less exhausted itself." *Id.* at 585.

Here, the Subpoena seeks information about interviews with fans, government officials, public commentators, bloggers, and even Defendant's own childhood friend and aunt. Counsel for the Defendant is free to try to speak to any of those people, and/or to subpoena them as witnesses if somehow they could actually have information that would be relevant to Defendant's criminal defense. And to the extent that the Defendant could be said to have exhausted alternative sources of certain information by seeking discovery directly from the Government, as previously discussed the fact that such discovery was denied merely reinforces why the Subpoena should be quashed with respect to a non-party such as ABC News.

## II.    THE SUBPOENA SHOULD ALSO BE QUASHED PURSUANT TO RULE 17(c)(2)

Alternatively, the Subpoena should be quashed because it fails to satisfy the requirements of Rule 17(c)(2) that are applicable to all subpoenas to non-parties. In fact, ABC News respectfully submits that the Subpoena so clearly fails to satisfy those requirements that the Court could elect to quash it on that basis alone, without reaching the issue of the journalist's privilege.

Under Federal Rule of Criminal Procedure 17(c)(2), Defendant bears the burden of showing that "the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence." *United States v. Barnes*, 560 F. App'x

14

36, 39–40 (2d Cir. 2014); *see also United States v. Percoco*, No. 16-CR-776 (VEC), 2018 WL
9539131, at *1 (S.D.N.Y. June 14, 2018) (noting that Rule 17 authorizes two types of subpoena,
and that the subpoena seeking non-impeachment material before trial must be aimed toward
obtaining "admissible evidence"). In other words, the Subpoena must "clear three hurdles: (1)
relevancy; (2) admissibility; (3) specificity." *United States v. Nixon,* 418 U.S. 683, 700 (1974);
*United States v. Avenatti*, No. (S1) 19 Cr. 373 (PGG), 2020 WL 508682, at *3 (S.D.N.Y. Jan. 31,
2020).

For the reasons already discussed regarding the journalist's privilege, Defendant cannot
clear the first hurdle of relevancy, let alone the heightened showing of relevance required by the
journalist's privilege. She also cannot clear the remaining hurdles.

First, the materials the Subpoena seeks are unlikely to be admissible. It consists of
materials such as unpublished footage of interviews, interview notes, communications with
interviewees, and internal communication within ABC News. Even if any of those materials
could be said to involve witnesses in this case, which is doubtful, those documents would consist
of inadmissible hearsay or double-hearsay material. *See United States v. Weissman,* 01-CR-529,
2002 WL 31875410, at *2 (S.D.N.Y. Dec. 26, 2002) ("[W]hile a prior inconsistent statement of a
witness may be admitted to impeach a witness's testimony, Kramer Levin – not the witness –
prepared the interview notes. 'A third party's characterization of a witness's statement does not
constitute a prior statement unless that witness subscribed to that characterization.'") (internal
citation omitted); *The New York Times v. Gonzales*, 459 F.3d 160, 182 (2d Cir. 2006) (noting
that most newsgathering material is "'hearsay' when published"). And to the extent the
Defendant might hope to sift through all of ABC's journalistic work product in the hope she
might find some non-hearsay statement by someone for impeachment purposes, that too is

15

inappropriate under Rule 17. *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("Courts have consistently interpreted … Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment.") (collecting cases). And the mere possibility that the broad Subpoena categories might sweep up some admissible evidence is not sufficient to meet Defendant's heavy burden. *United States v. RW Prof'l Leasing Servs. Corp.,* 228 F.R.D. 158, 162 (E.D.N.Y. 2005) ("The fact that [subpoenaed materials] are *potentially* relevant or *may be* admissible is not sufficient."); *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965) ("Unlike the rule in civil actions, a subpoena duces tecum in criminal action is not intended for the purpose of discovery; the document sought must at that time meet the tests of relevancy and admissibility."), *superseded by statute on other grounds, as noted in U.S. v. Mandanici*, 205 F3d 519 (2d Cir. 2000).

Second, the Subpoena categories are wholly lacking in specificity. Rule 17 subpoenas may "not be used as a fishing expedition to see what may turn up." *Avenatti*, 2020 WL 508682, at \*4 (internal quotes omitted). The specificity requirement ensures that Rule 17 "is not a method of discovery that supplements Rule 16." *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at \*11 (S.D.N.Y. Oct. 9, 2020) (citing *Nixon*, 418 U.S. at 698); *see also Bowman Diary Co. v. United States,* 341 U.S. 214, 220 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms"). Indeed, "[c]ourts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in" Rule 16. *Cherry*, 876 F. Supp. at 552 (internal quotes omitted).

The Subpoena here seeks such boundless categories as *all* footage "made or used in conjunction with the Program," *all* "footage concerning Defendant Jennifer Shah filmed in

preparation for the Program," and "all documents and communications concerning the interviews" in the Program, which number in the dozens. Murphy Decl., Ex. B. Courts routinely quash subpoenas seeking such ill-defined categories of records. *See, e.g., United States v. Cole*, No. 19 CR. 869 (ER), 2021 WL 912425, at *4 (S.D.N.Y. Mar. 10, 2021) (quashing two requests that were not limited to a time period or narrow subject matter; "rather than asking for specific parts of [the] file and proving to the court how they would be relevant, [the requesting party] simply seeks the entirety of the records" (internal quotes omitted)); *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 512 (S.D.N.Y. 2013) (quashing subpoena seeking "any and all writings and records" relating to a witness); *United States v. Columbo*, No. 04 CR. 273 (NRB), 2006 WL 2012511, at *15 (S.D.N.Y. July 18, 2006) (denying criminal conspiracy defendant's request to issue subpoena to third-party entities regarding, inter alia, "all" emails with the government concerning the allegations in the indictment); *accord United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) (noting that "[i]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused"). Based on the clear weight of these authorities, Defendant fails to satisfy the specificity prong because the Subpoena represents a classic fishing expedition.

Finally, the Subpoena on its face is patently "unreasonable and oppressive." Fed. R. Crim. Pr. 17(c)(2). It would impose the burden on ABC News to identify all persons who worked on the Documentary over the course of several months and search through all of their communications over that period of time to locate likely large quantities of responsive material. And regardless of any legal privilege, it would also put ABC News and its journalists in the position of violating their commitments to sources and interfering with their independence as

17

journalists. Any highly slim chance the responsive material would be of any value at all to the

Defendant is far outweighed by the unreasonable burden the Subpoena imposes on a non-party.

For all these reasons, the Subpoena should be quashed pursuant to Rule 17(c)(2).

## CONCLUSION

For the foregoing reasons, non-party movant ABC News requests this Court quash the

Subpoena.

Dated:   New York, New York
         February 25, 2022

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:   */s/ Nathan Siegel*
      Nathan Siegel

1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone: (212) 489-8230
Fax: (212) 489-8340
Email:   nathansiegel@dwt.com

*Counsel for Non-party Movant*
*American Broadcasting Companies, Inc.*

18