UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

---------------------------------------------------------------- x
:
UNITED STATES OF AMERICA,                   :
:    Case No. 1:19-cr-833 (SHS)
            Plaintiff,                      :
:    Hon. Sidney H. Stein
        - against -                         :
:    ECF Case
JENNIFER SHAH, et al.,                      :
:    **ORAL ARGUMENT REQUESTED**
            Defendants.                     :
:
---------------------------------------------------------------- x


# REPLY MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY AMERICAN BROADCASTING COMPANIES, INC.'S MOTION TO QUASH SUBPOENA


DAVIS WRIGHT TREMAINE, LLP

Nathan Siegel
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Tel.: (212) 489-8230
Fax: (212) 489-8340
nathansiegel@dwt.com

*Attorneys for Non-Party*
*American Broadcasting Companies, Inc.*

**TABLE OF CONTENTS**

**Page**

ARGUMENT .................................................................................................................................. 1

I.  THE SUBPOENA SHOULD BE QUASHED BECAUSE DEFENDANT
    HAS NOT SHOWN THE SUBPOENA IS VALID UNDER RULE 17(c)(2) ............ 2

    1.  Specificity ............................................................................................... 2

    2.  Relevance ................................................................................................ 3

    3.  Admissibility ........................................................................................... 4

II. THE SUBPOENA SHOULD BE QUASHED BECAUSE DEFENDANT
    HAS NOT MET THE DEMANDING BURDEN TO OVERCOME THE
    JOURNALIST'S PRIVILEGE ..................................................................................... 5

    A.  The Defendant's "Waiver" Argument is Frivolous ........................................... 7

    B.  The Defendant Fails to Satisfy Its Burden to Overcome the
        Journalist's Privilege ........................................................................................ 8

4874-4155-1893v.4 0019918-000099

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Carter v. City of New York*,
  No. 02 Civ. 8755 (RJH), 2004 WL 193142 (S.D.N.Y. Feb. 2, 2004) ........................................8

*Gonzales v. National Broadcasting Co., Inc.*,
  194 F.3d 29 (2d Cir. 1999)..................................................................................................6, 7

*Lonegan v. Hasty*,
  2008 WL 41445 (E.D.N.Y. Jan. 1, 2008) ................................................................................6

*In re McCray, Richardson, Santana, Wise, & Salaam Litig.*,
  991 F. Supp. 2d 464 (S.D.N.Y. 2013).....................................................................................9

*Sikelianos v. City of New York*,
  No. 05 CIV. 7673 RJS/JCF, 2008 WL 2465120, at *1 (S.D.N.Y. June 18,
  2008........................................................................................................................................8

*United States v. Brown*,
  No. 95 Cr. 168 (AGS), 1995 WL 387698 (S.D.N.Y. June 30, 1995).......................................2

*United States v. Burke*,
  700 F.2d 70 (2d Cir. 1983)..................................................................................................5, 8

*United States v. Cherry*,
  876 F. Supp. 547 (S.D.N.Y. 1995) .........................................................................................4

*United States v. Cole*,
  No. 19 Cr. 869 (ER), 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021)................................3

*United States v. Louis*,
  No. 04 CR, 203 (LTS), 2005 WL 180885 (S.D.N.Y. Jan. 27, 2005) ......................................3

*United States v. Mendinueta-Ibarro*,
  956 F. Supp. 2d 511 (S.D.N.Y. 2013).....................................................................................2

*United States v. Nixon*,
  418 U.S. 683 (1974)........................................................................................................2, 4, 5

*United States v. RW Prof'l Leasing Servs. Corp.*,
  228 F.R.D. 158 (E.D.N.Y. 2005) ........................................................................................4, 5

*United States v. Sawinski*,
  No. 00 CR. 499 RPP, 2000 WL 1702032 (S.D.N.Y. Nov. 14, 2000) ......................................4

**Rules**

Federal Rules of Criminal Procedure 16 .................................................................................. 3, 6

Federal Rules of Criminal Procedure 17 ............................................................................... *passim*

Federal Rules of Criminal Procedure 17(c) .......................................................................... 2, 3, 4

Federal Rules of Criminal Procedure 17(c)(2) ......................................................................... 1, 2

Non-party American Broadcasting Companies, Inc. ("ABC News") submits this reply memorandum of law in support of its motion, pursuant to Federal Rule of Criminal Procedure 17(c)(2), to quash the subpoena by Defendant Jennifer Shah ("Defendant") seeking unpublished information in connection with an ABC News documentary report.

## ARGUMENT

Defendants' own arguments for seeking enforcement of the Subpoena show why it should be quashed. Her arguments amount to the proposition that because ABC News produced a documentary that relates in part to the subject-matter of this trial, Defendant is entitled to plenary inspection of ABC's newsgathering materials, simply because there might be something somewhere within them that might prove useful to her case. The Opposition is thus rife with speculative statements, such as that ABC News "could" be "sit[ting] on" exculpatory evidence (Opp. at 6), that "it is possible" that ABC News waived its privilege (Opp. at 10), that evidentiary rules "may provide bases for admission of" unspecific out-of-court statements (Opp. at 6), and that the subpoenaed materials may include statements by "potential" unnamed witnesses (Opp. at 3, 5, 6, 8-9). If such hypotheticals were a sufficient basis to enforce subpoenas, then no news organization could independently report about subjects involving judicial proceedings without being immediately subject to subpoenas.

Defendant's Opposition fails to identify a single specific interviewee, potential witness, or statement in the Program that would be relevant and admissible under the Rule 17 standard, let alone satisfy the higher standard under the reporter's privilege. Defendant speculates that somewhere within the information sought there might be something useful for impeachment, but courts have repeatedly made clear that Rule 17 is not designed to develop pretrial impeachment evidence even where (unlike here) it is specifically identified. *See* Section I(2), *infra*. Rule 17 and the reporter's privilege demand a much greater showing of specificity, relevance,

1

admissibility, and the exhaustion of alternative sources of information. If the Subpoena itself left any doubt, the Opposition confirms that Defendant is engaged in a classic fishing expedition.

**I.   THE SUBPOENA SHOULD BE QUASHED BECAUSE DEFENDANT HAS NOT SHOWN THE SUBPOENA IS VALID UNDER RULE 17(c)(2)**

The Defendant first argues that the Subpoena satisfies the standards established by Rule 17(c). Opp. at 4-8. It does not. The parties agree that the "strict standard" set forth by the Supreme Court in *United States v. Nixon*, 418 U.S. 683, 700 (1974) applies to the Rule 17 subpoena here. Namely, Defendant is required to "specifically identify[] the materials sought and show[] that they are relevant and admissible." *United States v. Brown,* No. 95 Cr. 168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995). Defendant's efforts to clear these three hurdles—specificity, relevance, and admissibility—underscore the speculative nature of the Subpoena.

    **1.   Specificity**

Defendant fails to identify any of the sought-after materials with any specificity, let alone the high level of specificity required under the law. Defendant "must be able to 'reasonably specify the information contained or believed to be contained in the documents sought' rather than 'merely hop[e] that something useful will turn up.'" *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ((citation omitted)). Instead, Defendant claims the Subpoena seeks "statements made by potential witnesses, including purported victims and government agents" (Opp. at 8).[1] In truth, the Subpoena seeks much broader categories of all documents, video footage, interviewer notes, internal memoranda, and communications both

---

[1] Defendant also claims the Subpoena's requests are specific enough because they "cover a discrete time period and relate to a cabined series of events." Opp. at 7-8. Notably, Defendant does not cite the "discrete time period" or describe a "series of events" listed in the Subpoena, because the Subpoena contains no such parameters. *See* Murphy Decl., Ex. B.

2

within ABC News and with dozens of sources related to the Program. The sheer volume of these materials underscores that the Subpoena is not specific enough to meet the Rule 17 requirements. *United States v. Louis*, No. 04 CR, 203 (LTS), 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (a party must identify "specific evidentiary items" for use in "a court proceeding," rather than "large quantities of documents").

Even if the Subpoena were limited to "statements made by potential witnesses," as Defendant claims (which it is not), it would lack the requisite specificity because the Subpoena identifies no witness who Defendant asserts will testify at trial, nor any specific statement by such person. As courts have repeatedly held, "Rule 17 is not a method of discovery that supplements Rule 16." *United States v. Cole*, No. 19 Cr. 869 (ER), 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021) (internal quotes omitted); *see also Louis*, 2005 WL 180885, at *3 ("Rule 17(c) was not intended to provide an additional means of discovery." (quoting *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)); Mot. at 15-16 (collecting cases).

### 2. Relevance

Defendant must make a heightened showing of relevance under the journalist's privilege, as discussed in Section II, *infra*. Defendant fails, however, to meet even the relevance standard applicable under Rule 17. Defendant asserts that the information sought by the Subpoena is not "categorically irrelevant", but that does not equate to a showing of actual relevance. Opp. at 5. Defendant does not even attempt to show how seeking all video, reporter's notes, communications and all other materials related to interviews with fans of *The Real Housewives* program, entertainment critics, legal commentators, journalists and numerous others could possibly be relevant to her defense.

And with respect to the only aspect of her Subpoena Defendant even addresses, she speculates that statements by unspecified "potential trial witnesses," including unspecified

3

"alleged victims" and the Supervisory Agents, "may be" exculpatory and "may also serve" as impeachment evidence. Opp. at 5-6. Again, hypothesizing about the theoretical possibility that there might be relevant evidence somewhere does not equate to a showing of actual relevance. *United States v. RW Prof'l Leasing Servs. Corp.,* 228 F.R.D. 158, 162 (E.D.N.Y. 2005) ("The fact that [subpoenaed materials] are *potentially* relevant or *may be* admissible is not sufficient."). And while such speculation alone requires that the Subpoena be quashed, Defendant fails to identify any actual person interviewed in the Program whom she has reason to believe is part of the case against her.

Moreover, even if Defendant were able to offer anything more than speculation about possible impeachment material, courts are abundantly clear that Rule 17 subpoenas cannot be used solely to gather impeachment evidence. *See, e.g.*, *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("Courts have consistently interpreted … Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment.") (collecting cases); *United States v. Sawinski*, No. 00 CR. 499 RPP, 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000) ("If the material sought, however, is only admissible for impeachment purposes, then it will not be sufficient to meet the requirements of Rule 17(c)."). As the Supreme Court put it, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701.[2]

### 3. Admissibility

Defendant speculates that the Federal Rules of Evidence "may" provide bases for admission of out-of-court statements if, for example, an alleged victim who was interviewed could not recall events at trial, but she admits that "it is not possible to determine all the bases for

admissibility" without having "inspected the information" first. Opp. at 7. That is not how Rule 17 works. Defendant must *first* demonstrate admissibility, and only *then* may inspect the information. *See RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. at 162(proponent of subpoena duces tecum has the burden of showing the documents sought "are both relevant and admissible at the time of the attempted procurement"). Because Defendant has not identified a single specific item of relevant, admissible evidence that she wishes to introduce at trial, the Subpoena should be quashed. *Compare Nixon*, 418 U.S. at 700-01 (finding that admissibility standard was met where "most of the tapes apparently contain conversations to which one or more of the defendants named in the indictment were party").

Finally, Defendant offers no response to the point that the Subpoena on its face is "unreasonable and oppressive" because it imposes an enormous burden on ABC News to search for and produce all files of all persons who worked on the Documentary and produce a large volume of material.

## II. THE SUBPOENA SHOULD BE QUASHED BECAUSE DEFENDANT HAS NOT MET THE DEMANDING BURDEN TO OVERCOME THE JOURNALIST'S PRIVILEGE

Defendant does not dispute that the reporter's privilege applies here, and accordingly, Defendant faces a "demanding burden" in seeking to overcome this constitutional protection. *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983). The Opposition does not come close to meeting this burden.

In discussing the applicable burden, Defendant argues that subpoenas for confidential and non-confidential information face differing legal standards.[3] That is so, but a robust journalist's privilege applies in full force to non-confidential materials because "[w]here non-confidential

---

[3] Though it is not in the Subpoena, Defendant now states she is not seeking confidential sources or materials. Opp. at 9.

5

information is involved, the damage [to a free press] is … no less real." *Lonegan v. Hasty*, 2008 WL 41445, at *2 (E.D.N.Y. Jan. 1, 2008). Moreover, Defendant's core argument demonstrates why the privilege was designed to apply to exactly this type of Subpoena.

Defendant claims that ABC News conducted an "investigation parallel to that of the Government" into Defendant's alleged criminal conduct, and since it "operates entirely outside the reach of *Brady*, Rule 16, or § 3500," the Subpoena is necessary to explore this "investigation." Opp. at 5. That description of ABC News' newsgathering cannot be taken seriously, given that ABC began working on the Documentary several months after the indictment was filed and Defendant offers no evidence that ABC News had anything to do with the timing or progress of the Government's investigation. *See* Murphy Decl., ¶ 3. In any event, to the extent Defendant complains that ABC News conducted its *own* investigation, be it "parallel" or not (Opp. at 5)", whatever information-gathering ABC News might have done was independent journalism that is exactly what the journalists' privilege protects. To the extent the law shields these newsgathering materials from Defendant's probing, it is by design, not by mistake.

The Second Circuit has noted the "broader concerns undergirding the qualified privilege for journalists—such as the 'pivotal function of reporters to collect information for public dissemination,' . . .'and the paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters.'" *Gonzales v. National Broadcasting Co., Inc.*, 194 F.3d 29, 35 (2d Cir. 1999) (citations omitted). And this Circuit recognizes a robust privilege for non-confidential materials specifically because:

> These broader concerns, we believe, are relevant regardless whether the
> information sought from the press is confidential. If the parties to any lawsuit

were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties—particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation. Incentives would also arise for press entities to clean out files containing potentially valuable information lest they incur substantial costs in the event of future subpoenas. And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

*Id*. Thus, Defendant's arguments that the Court should effectively treat ABC News as if it were the Government with *Brady* and other concomitant obligations, and that Defendant has a right to effectively co-opt any investigation done by ABC News as if it were its own, is exactly what the privilege is intended to guard against.

### A.     The Defendant's "Waiver" Argument is Frivolous

It is telling that Defendant's first argument for overcoming the qualified privilege is patently meritless and circular. Defendant speculates that ABC News may have waived its privilege by communicating with the prosecution—even though Defendant has no evidence of this, and, to the contrary, ABC News attested that it "did not speak to any prosecutors involved in this" in the creation of the Program. Opp. at 9-10; Murphy Decl., ¶ 4. Then, by claiming she cannot know whether ABC News made such a disclosure to the Government unless ABC News discloses whether it exchanged information with the Government, she effectively asks this Court to ignore the privilege in order to test whether the privilege might have been waived. Opp. at 9 n.4. This absurd approach should be rejected. Moreover, for purposes of trying to make a different argument Defendant's Opposition elsewhere answers her own hypothetical—asserting that "the defense has no reason to believe that the government has requested any of this information from ABC News." Opp. at 11.

### B. The Defendant Fails to Satisfy Its Burden to Overcome the Journalist's Privilege

Defendant's failure to demonstrate relevance even under the lower Rule 17 standard is discussed in Section I(2), *supra*. Defendant faces an even higher burden on relevance to overcome the privilege, yet offers nothing more than the conclusory claim that the materials sought by the Subpoena—which Defendant admits include everything from "the circumstances surrounding Ms. Shah's arrest, the agents' views on the case and background knowledge, and *untold other topics*"—are "likely relevant to the defense." Opp. at 10 (emphasis added). This amounts to an argument that with a net cast wide enough, some fish might swim in.

Defendant even claims relevance on the basis of speculative hypotheticals that are once removed. She speculates that the ABC News materials might have information relating to the *Ketabchi* case, and then if so further speculates that such information "could be exculpatory" or yield impeachment evidence in this case. Opp. at 9-10. That position would not vitiate the journalist's privilege even if this were the *Ketabchi* case—let alone overcome it in this one. Defendant completely ignores the numerous factually analogous cases cited by ABC News, which demonstrate that courts routinely quash or limit subpoenas that seek newsgathering material much more relevant than the material sought here. *See*, *e.g.*, Mot. at 8-10 (discussing cases). As explained there, courts have rejected requests for journalistic material where a criminal defendant sought impeachment material for a specific, named key witness (*Burke*, 700 F.2d at 76-77); where a protester sought photographs from the day he was arrested to "refresh the recollection of witnesses who were on the scene" (*Sikelianos v. City of New York*, No. 05 CIV. 7673 RJS/JCF, 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008)); and where a group of firefighters sought the testimony of a reporter who was a direct witness to the events at the center of the lawsuit (*Carter v. City of New York*, No. 02 Civ. 8755 (RJH), 2004 WL 193142, at *1

(S.D.N.Y. Feb. 2, 2004)).  Defendant ignores these cases and does not cite a *single* case where a court permitted a criminal defendant to sift through newsgathering records in the hope that those records would include some sort of unspecified "exculpatory or impeachment evidence"—let alone a case involving a Subpoena as wide-ranging as the one here.  Defendant's generalized request for "interviews, outtakes, and other statements [that] may contain relevant exculpatory or impeachment material" (Opp. at 10) clearly falls short of the high burden of demonstrating relevance under the reporter's privilege. *See In re McCray, Richardson, Santana, Wise, & Salaam Litig.*, 991 F. Supp. 2d 464, 470 (S.D.N.Y. 2013) (quashing subpoena where requesting party could "point to no *particular* interview or outtake that would provide the evidence they seek") (emphasis added).

Defendant also criticizes ABC News for noting the Court's decision relating to its prior request for discovery and other relief from the Government regarding the interviews with the so-called "Supervisory Agents".  Defendant mischaracterizes ABC News' point.  ABC News does not maintain Defendant is technically estopped from issuing the Subpoena.  Rather, what is most relevant is that part of the basis for the Court's prior decision was that the agents' statements in the Program "are largely statements about telemarketing fraud overall, with general references to the lifestyles of the persons involved and a Homeland Security investigation into telemarketing floors." Dkt. 418 at 1.  Defendant ignores that aspect of the Court's ruling entirely, and it reinforces why Defendant does not make a showing of likely relevance even with respect to those interviews—let alone with respect to the entire Subpoena.  Finally, Defendant merely asserts that there are no alternative sources of information (Opp. at 11).  She does not explain why she cannot even attempt to obtain information from other sources concerning persons such as the fans, government officials, public commentators,

9

bloggers, and even Defendant's own childhood friend and aunt who were interviewed for the Documentary.

## CONCLUSION

For the foregoing reasons, non-party movant ABC News requests this Court grant its Motion and quash the Subpoena.

Dated:  New York, New York
        March 18, 2022

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:  */s/ Nathan Siegel*
     Nathan Siegel

1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone: (212) 489-8230
Fax: (212) 489-8340
Email:   nathansiegel@dwt.com

*Counsel for Non-party Movant*
*American Broadcasting Companies, Inc.*