UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED STATES OF AMERICA

          -against-

JENNIFER SHAH,

                   Defendant.

------------------------------------------------------------x

19 Cr. 833 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

    In late November of last year, the news division of the American Broadcasting Companies' ("ABC News") released a television documentary entitled "The Housewife and the Shah Shocker," which discussed defendant Jen Shah's work as a cast member of the reality television show "The Real Housewives of Salt Lake City" and also described the telemarketing fraud scheme underlying the indictment here against Shah. According to Eileen Murphy, the senior editorial producer of the documentary, ABC News staffers interviewed both nonconfidential and confidential sources, (Murphy Decl. ¶ 4, ECF No. 492), and collected a "vast trove of documents, footage, and communications" as part of a journalistic process that produced "thousands of documents and materials such as e-mails, texts, drafts, pages of notes and digital media files." Id. ¶ 5. According to Ms. Murphy, no prosecutors involved in this criminal action were interviewed by ABC. Id. at 4.

    Shortly after the documentary aired, Shah moved to dismiss the indictment and seek discovery from and sanction the government for the involvement of two supervisory special agents from Homeland Security Investigations as interviewees in the documentary. (ECF Nos. 406, 410.) This Court denied that motion in full on December 10, 2021. (ECF No. 418.)

    On February 11, 2022, Shah served a subpoena on ABC News in another effort to obtain materials related to the documentary. The subpoena requests production of the following seven categories of documents:

1. All video footage, including raw video footage, made or used in conjunction with [the documentary]. This request includes but is not limited to any video footage that was not aired in [the documentary].
2. All documents and communications between ABC News and any member of the Prosecution Team concerning [the documentary].
3. Identification of all government agents or other members of the Prosecution Team

1

who provided information to ABC News in connection with [the documentary].
4. Any and all releases, waivers, or other documentation provided to any individual who appeared on [the documentary], including any member of the Prosecution Team.
5. All video footage concerning Defendant Jennifer Shah filmed in preparation for [the documentary].
6. Any and all documents and communications concerning the interviews taken for [the documentary], including without limitation, all interviewer notes (taken either during the recorded portion of [the documentary] or during pre-interviews), internal memoranda related to the interviews or their content.
7. Any and all documents and communications between You and any employee or representative of Forest Production, Inc., Invent TV, LLC, Bravo, or NBCUniversal Television concerning [the documentary].

(Murphy Decl. Ex. B., ECF No. 492.) ABC News now moves to quash the subpoena on the basis that it seeks information protected by the journalists' privilege, and/or is "unreasonable or oppressive" under Fed. R. Crim. P. 17(c)(2). Oral argument was held on April 25.

I.   **The journalists' privilege protects this information.**

The United States Court of Appeals for the Second Circuit recognizes a journalists' privilege in light of the need "to protect the public's interest in being informed by a vigorous, aggressive and independent press." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) (internal quotation marks and citations omitted). The journalists' privilege is a qualified privilege that protects both confidential and nonconfidential press materials from disclosure. *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 32 (2d Cir. 1999). The standards for overcoming the privilege are more rigorous for confidential sources than for nonconfidential ones. In order to secure disclosure of confidential materials and sources, the party seeking it must make "a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982). The party seeking disclosure of nonconfidential materials, however "is entitled to the requested discovery notwithstanding a valid assertion of the journalists' privilege if he can show that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 36.

Furthermore, the privilege applies in both civil and criminal cases. *See United States v. Treacy*, 639 F.3d 32, 43 (2d Cir. 2011); *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983) ("We see no legally-principled reason for drawing a distinction between civil and criminal cases when considering whether the reporter's interest in confidentiality should yield to the

2

moving party's need for probative evidence.")

The subpoena here, far broader in scope than the discovery Shah unsuccessfully sought from the government in the days following the documentary's first airing (ECF No. 406, 418), concerns both confidential and nonconfidential information. To the extent that it seeks "[a]ny and all documents and communications concerning the interviews taken," it sweeps confidential information within its copious ambit. (Murphy Decl. ¶ 4 & Ex. B, ECF No. 492.) Much of the remainder of the subpoena may or may not seek confidential information; each request seeks "all" or "any and all" documents, footage, and communications in various broad categories.

Even assuming the more relaxed *Gonzales* standard for nonconfidential materials would apply, Shah fails to show that the subpoena seeks materials of "likely relevance to a significant issue in the case." *Gonzales*, 194 F.3d at 36. Shah states that "[t]he ABC News interviews solicited information about [her] case, the circumstances surrounding [her] arrest, the agents' views on the case and background knowledge, and untold topics, each of which is likely relevant to the defense." (Def. Mem. at 10, ECF No. 507.) Those broad categories of purported interest to Shah fail to establish "likely relevance to a significant issue" as required by *Gonzales*. *See In re McCray, Richardson, Santana, Wise, Salaam Litig.*, 991 F. Supp. 2d 464 (S.D.N.Y. 2013).

In *McCray*, the district court granted a motion to quash a subpoena seeking outtakes from a documentary where defendants "point[ed] to no particular interview or outtake that would provide the evidence they seek," and instead "ma[de] only general claims that the outtakes are likely to contain relevant material." *Id.* at 470. Other courts in this district have found the wide breadth of similar subpoenas dispositive in granting motions to quash. *Compare Sikelianos v. City of New York*, No. 05-cv-7673 (RJS) (JCF), 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008) (granting the Associated Press's motion to quash a subpoena seeking unpublished photographs of the plaintiff's arrest on the odds they might be able to be used to refresh witnesses' recollections, finding the subpoena "[in]sufficient to show a particularized need for the photos") *with Sokolow v. Palestine Liberation Org*, No. 04-cv-397 (RLE), 2012 WL 3871380, at *2 (S.D.N.Y. Sept. 6, 2012) (denying the British Broadcasting Corporation's motion to quash subpoenas where the plaintiff sought likely relevant outtakes from two specific interviews).

Here, as in *McCray*, Shah "point[s] to no particular interview or outtake that would provide the evidence [she] seek[s]." *McCray*, 991 F. Supp. 2d at 470. Rather, much of Shah's subpoena essentially seeks "wholesale exposure of press files to litigant scrutiny." *Gonzales*, 194 F.3d at 35. Requiring ABC News to comply with these requests "would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties," by having a chilling effect on the cooperation and collaboration of potential sources with the press "because of the likelihood that they would be sucked into

3

litigation." *Id.* Furthermore, as ABC News points out, the documentary "was created months after the alleged conduct underlying the criminal charges, and [Shah] cannot . . . argue that it depicts her actually engaging in any of the alleged activity at all, let alone in some manner that could exonerate her." (Mem. at 11, ECF No. 493.)

Because Shah has not shown that that the subpoena seeks materials of "likely relevance to a significant issue in the case," *Gonzales*, 194 F.3d at 36, she has not overcome the journalists' privilege applicable to the materials sought by her subpoena.

## II. The requirements set forth in *United States v. Nixon* have not been met.

Although the subpoena's failure to overcome the journalists' privilege is dispositive, the Court also notes that the subpoena also fails to survive the requirements of Fed. R. Crim. P. Rule 17(c). To survive a motion to quash, "the materials requested [must be] relevant, specifically identified, admissible, and not otherwise procurable by due diligence." *United States v Barnes*, 560 F. App'x 36, 39–40 (2d Cir. 2014); *see also United States v. Nixon*, 418 U.S. 683, 700 (1974) (the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity"). Importantly, a Rule 17 subpoena "is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700. The subpoena here suffers from the same defects as the one served on counsel for Shah's co-defendants, whose motion to quash was recently granted by this Court in a separate opinion. (ECF No. 540.)

As with that subpoena, the subpoena here constitutes a "general fishing expedition." And, "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013). Indeed, none of the seven categories of documents Shah seeks "reasonably specif[ies] the information . . . believed to be contained in the documents sought," and instead, show that she "merely hopes that something useful will turn up" through their disclosure. *United States v. Sawinski*, 00-cr-499 (RPP), 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000). Such a subpoena is exactly the kind of "fishing expedition" *Nixon*'s strict standard is designed to prevent.

Next, Shah may not use this subpoena to make an end-run around the discovery rules set forth in Fed. R. Crim. P. 16. Shah attests that the subpoena is needed to unearth "prior inconsistent statements" by potential witnesses and "exculpatory evidence," and that she "seeks statements made by potential witnesses, including purported victims and government agents, specifically related to the allegations in this matter." (Def. Mem. at 6, 8, ECF No. 501). To the extent that any of the subpoenaed material is related to a government witness's testimony, the information will be subject to the government's disclosure obligations under 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). The Rule 17 subpoena is "not intended to provide a means

4

of discovery for criminal cases." *Nixon*, 418 U.S. at 698 (citing *Bowman Dairy Co. v. United States*, 314 U.S. 214, 220 (1951)). And to the extent that there is the possibility that the subpoenaed material contains relevant evidence that the government will not be required to disclose, Shah's subpoena fails to specify what that evidence might be.

Finally, ABC News contends that the subpoena is "on its face . . . 'unreasonable and oppressive' because it imposes an enormous burden . . . to search for and produce all files of all persons who worked on the [d]ocumentary and produce a large volume of material." (Reply Mem. at 5, ECF No. 512). The Court agrees that Shah's subpoena "would burden [ABC News] with heavy costs of subpoena compliance" for the impermissible purpose of allowing Shah to "sift through press files in search of information supporting [her defense]." *Gonzales*, 194 F.3d at 35.

Thus, the subpoena fails to satisfy the requirements set forth in *Nixon*, 418 U.S. at 700, as well.

### III. Conclusion

Because the journalists' privilege protects the material sought by the subpoena, and the subpoena fails to satisfy the requirements of *Nixon*, ABC News's motion to quash the subpoena served upon it is hereby granted.

Dated:   New York, New York
         May 5, 2022

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

5