```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        19 CR 833 (SHS)

 5   JENNIFER SHAH,

 6              Defendant.                Plea
     ------------------------------x
 7
                                          New York, N.Y.
 8                                        July 11, 2022
                                          10:45 a.m.
 9

10   Before:

11
                         HON. SIDNEY H. STEIN,
12
                                          District Judge
13
                            APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  KIERSTEN FLETCHER
          ROBERT SOBELMAN
17        SHEB SWETT
          Assistant United States Attorneys
18
     CHAUDHRYLAW PLLC
19        Attorneys for Defendant
     BY:  PRIYA CHAUDHRY
20        SETH J. ZUCKERMAN

21

22

23

24

25
```

1              (Case called)

2              MS. FLETCHER:  Good morning, your Honor, Kiersten

3    Fletcher, Robert Sobelman, and Sheb Swett for the government.

4              THE COURT:  Good morning.

5              MS. CHAUDHRY:  Good morning, your Honor, Priya

6    Chaudhry and Seth Zuckerman for Ms. Shah, who is present and

7    standing between us.

8              THE COURT:  Good morning.  You may be seated in the

9    courtroom.

10             I understand you have an application, Ms. Chaudhry?

11             MS. CHAUDHRY:  Yes, your Honor.  At this time Ms. Shah

12   would like to withdraw her plea of not guilty and enter into a

13   plea of guilty to the first count in the indictment.

14             THE COURT:  I take it it's pursuant to a document I

15   find on my bench, dated July 10, which I take it is the plea

16   agreement in this action?

17             MS. CHAUDHRY:  That is correct, your Honor.

18             THE COURT:  Ms. Blake, please administer the oath to

19   the defendant.

20             (Defendant sworn)

21             THE DEPUTY CLERK:  Please state your full name and

22   spell your name for the record.

23             THE DEFENDANT:  Jennifer Keikilani, K-e-i-k-i-l-a-n-i,

24   Shah, S-h-a-h.

25             THE COURT:  Ms. Shah, do you understand that you are

1  now under oath and that if you answer any of my questions

2  falsely, your false or untrue answers may later be used against

3  you in another prosecution for perjury or for making a false

4  statement?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  How old are you, ma'am?

7          THE DEFENDANT:  Forty-eight years old.

8          THE COURT:  How far did you go in school?

9          THE DEFENDANT:  Two years of college.

10         THE COURT:  Are you able to read, write, speak, and

11 understand English?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Are you now or have you recently been

14 under the care of a doctor or a psychiatrist?

15         THE DEFENDANT:  No.

16         THE COURT:  Have you ever been treated or hospitalized

17 for any mental illness or any type of addiction, including drug

18 or alcohol addiction?

19         THE DEFENDANT:  Yes.

20         THE COURT:  When was that?

21         THE DEFENDANT:  Two years ago.

22         THE COURT:  Was it inpatient?

23         THE DEFENDANT:  No, your Honor.

24         THE COURT:  What was it for?

25         THE DEFENDANT:  It was for alcohol and depression.

1          THE COURT:  About two years ago?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Thank you.

4          But you were not hospitalized for it?

5          THE DEFENDANT:  No.

6          THE COURT:  In the past 24 hours, Ms. Shah, have you

7     taken any drugs, medicine, or pills or consumed any alcohol?

8          THE DEFENDANT:  Your Honor, I have taken two of my

9     prescribed prescription pills this morning.

10          THE COURT:  Do either of them affect your mental

11     cognition?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  Is your mind clear today?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Are you feeling all right?

16          THE DEFENDANT:  Yes.

17          THE COURT:  You have an attorney?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Who is that.

20          THE DEFENDANT:  Priya Chaudhry and Seth Zuckerman.

21          THE COURT:  Ms. Chaudhry and Mr. Zuckerman, do either

22     of you have any doubt as to Ms. Shah's competence to plead at

23     this time?

24          MS. CHAUDHRY:  We do not.

25          MR. ZUCKERMAN:  No, your Honor.

1          THE COURT:  Ms. Shah, you heard Ms. Chaudhry a moment

2    ago tell me that you wish to enter a plea of guilty to Count

3    One of the indictment against you in this action.  Is that

4    true?  Do you wish to enter a plea of guilty to Count One?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Have you had a full opportunity to discuss

7    your case with Ms. Chaudhry and with Mr. Zuckerman and to

8    discuss the consequences of your entering a plea of guilty

9    today with them?

10          THE DEFENDANT:  Yes, your Honor, I have.

11          THE COURT:  Are you satisfied -- I'm sorry.  I didn't

12    mean to cut you off.

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  Are you satisfied with your attorneys and

15    their representation of you?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  On the basis of Ms. Shah's responses to my

18    questions and my observations of her demeanor as she stands

19    here before me and as she has appeared in this courtroom in

20    this action on prior occasions, I make the finding that she is

21    fully competent to enter an informed plea at this time.

22          Before I accept a plea from you, Ms. Shah, I am going

23    to be asking you certain questions, and those questions are

24    intended to satisfy me that you wish to plead guilty because

25    you are guilty and that you fully understand the consequences

1  of entering a plea of guilty.

2          I am going to be describing to you certain rights you

3  have under the Constitution and laws of the United States, and

4  you are going to be giving up those rights if you enter a plea

5  of guilty today.

6          I need you to listen to me carefully, Ms. Shah.  If

7  you do not understand anything I'm saying to you or you do not

8  understand anything I'm asking you, I want you to stop me.  You

9  can ask me anything you want.  You can ask your attorneys

10  anything you want.  My concern is to make certain that you

11  understand what I'm asking you and that you understand what I'm

12  saying to you.  Do you understand that?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Under the Constitution and laws of the

15  United States, Ms. Shah, you have a right to a speedy and

16  public trial by a jury on the charges against you which are

17  contained in indictment S4 19 CR 833.  Do you understand those

18  rights?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  If there were a trial, you would be

21  presumed innocent and the government would be required to prove

22  you guilty by competent evidence and beyond a reasonable doubt.

23  You would not have to prove you were innocent at a trial.  Do

24  you understand those rights?

25          THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  If there were a trial, a jury composed of

2    12 people selected from this district would have to agree

3    unanimously that you were guilty.  Do you understand that

4    right?

5    THE DEFENDANT:  Yes, your Honor.

6    THE COURT:  You have a right to be represented by an

7    attorney at your trial and at every stage of the proceeding.

8    If you cannot afford an attorney, one would be given to you at

9    no cost to you.  Do you understand those rights?

10   THE DEFENDANT:  Yes, your Honor.

11   THE COURT:  If there were a trial, you would have the

12   right to see and hear all of the witnesses against you and your

13   attorney could cross-examine them.  You would have a right to

14   have your attorney object to the government's evidence and

15   offer evidence on your own behalf, if you so desired, and you

16   would have the right to have subpoenas issued or other

17   compulsory process used to compel witnesses to testify in your

18   defense.  Do you understand those rights?

19   THE DEFENDANT:  Yes, your Honor.

20   THE COURT:  If there were a trial, you'd have the

21   right to testify you if you wanted to, but no one could force

22   you to testify if you did not want to and, in addition, no

23   inference or suggestion of guilt could be drawn if you decided

24   not to testify at your trial.  Do you understand those rights?

25   THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  You understand that by entering a plea of

2    guilty today in this courtroom, you will be giving up every one

3    of the rights I have been listing, you're waiving those rights

4    and that you will have no trial.

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you understand you have the right to

7    change your mind right now, Ms. Shah, and you can refuse to

8    enter a plea of guilty.  You don't have to enter a plea of

9    guilty this morning if you do not want to, for any reason

10   whatsoever.  Do you understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Have you received a copy of the indictment

13   in this case against you?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Did you read it?

16         THE DEFENDANT:  Yes, I did.

17         THE COURT:  Did you discuss it with your attorneys?

18         THE DEFENDANT:  Yes, your Honor, I did discuss it.

19         THE COURT:  Did -- again, I'm sorry.  I didn't mean to

20   cut you off.

21         THE DEFENDANT:  Yes, your Honor, I did discuss it, and

22   they answered all of my questions.

23         THE COURT:  You have the right to have me read the

24   indictment out loud now in open court.  But if you don't want

25   me to read it, I won't.

 1                MS. CHAUDHRY:  Your Honor, we waive the public

 2     reading.

 3                THE COURT:  Is that true, Ms. Shah, you don't want me

 4     to read it?

 5                THE DEFENDANT:  Yes, your Honor.

 6                THE COURT:  I accept that as a knowing and voluntary

 7     waiver of the right to have the indictment read in open court.

 8                You understand you are charged in Count One with

 9     participating in a conspiracy to commit wire fraud in

10     connection with the conduct of telemarketing, in violation of

11     18, United States Code, Sections 1349 and 2326.  Do you

12     understand that?

13                THE DEFENDANT:  Yes, your Honor.

14                THE COURT:  Do you understand that if you did not

15     plead guilty, the government would have to prove each and every

16     part or element of the charge in Count One beyond a reasonable

17     doubt at a trial.  Do you understand that?

18                THE DEFENDANT:  Yes, your Honor.

19                THE COURT:  Ms. Fletcher, would you set forth the

20     elements that the government would have to prove beyond a

21     reasonable doubt before a jury would be entitled to convict

22     Ms. Shah of Count One.

23                MS. FLETCHER:  Yes, your Honor.

24                Were the defendant to proceed to trial, the government

25     would be required to prove the two elements of Title 18, United

10

States Code, Section 1349. The first element is that the defendant agreed with others to violate the law. The second element is that the defendant entered the agreement knowingly and willfully. Here, the object of Count One is the agreement to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

Wire fraud, under Section 1343, has six elements: First, that the defendant engaged in a scheme to defraud; second, that he or she do so by means of false or fraudulent pretenses or statements; third, that those false statements relate to material facts; fourth, that the misstatements were made in an effort to obtain money or property; fifth, that the defendant intended to defraud victims of the crime; and, finally, that the wire fraud crime involved the use of interstate wires; that is, the wires between the states.

Because Count One as charged also includes an enhancement for telemarketing under Title 18, United States Code, Section 2326, the government would also be required to prove that the wire fraud conspiracy involved the conduct of telemarketing and that it involved more than 10 victims over the age of 55.

The elements I have just articulated, the government would have to prove beyond a reasonable doubt. In addition, the government would have to show venue is proper in the Southern District of New York by a preponderance of the

1  evidence.

2          THE COURT:  Thank you.

3          Ms. Shah, do you understand that with the exception of

4  venue requirement, the elements that Ms. Fletcher set forth

5  would have to be proved beyond a reasonable doubt to the jury

6  before the jury could convict you of Count One.  Do you

7  understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  And the burden that the government has on

10 the venue requirement is simply to prove that venue is proper,

11 meaning at least one act in connection with the alleged

12 conspiracy took place in the Southern District of New York.

13 But that has to be proved by the government simply by a

14 preponderance of the evidence, not beyond a reasonable doubt.

15 Do you understand that as well?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do you understand that the maximum

18 possible penalty of Count One to which you are pleading guilty

19 is 30 years in prison, a maximum term of supervised release of

20 five years, maximum fine, pursuant to 18, United States Code,

21 Section 3571 of the greatest of $250,000 or twice the gross

22 pecuniary gain derived from the offense or twice the gross

23 pecuniary loss to individuals other than you resulting from the

24 offense, plus a $100 mandatory special assessment.  Do you

25 understand that?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you also understand that I must order

3   restitution to those injured as a result of your criminal

4   conduct?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Now, when I was setting forth the various

7   aspects of the maximum penalty here, I mentioned that a part of

8   that was a maximum term of supervised release of five years.

9   Supervised release, Ms. Shah, means that you are going to be

10  subject to monitoring upon your release from prison, and that

11  monitoring will be under terms and conditions that could lead

12  to your reimprisonment without a jury trial for all or part of

13  the term of supervised release and without credit for time

14  previously served on postrelease supervision if you violate any

15  term or condition of your supervised release.  Do you

16  understand that?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Do you understand that if I accept your

19  guilty plea this morning, ma'am, and determine you to be

20  guilty, that determination may deprive you of such valuable

21  civil rights, such as the right to vote, the right to hold

22  public office, the right to serve on a jury, and the right to

23  possess a firearm?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Ms. Chaudhry, I gather your client is a

1    United States citizen, is that correct?

2              MS. CHAUDHRY:  That is correct, your Honor.

3              THE COURT:  Ms. Shah, there are sentencing guidelines

4    that judges must utilize in applying the factors set forth in

5    18, United States Code, Section 3553(a) to determine what a

6    fair, reasonable, and appropriate sentence is in your case.

7    Have you talked to your attorneys about the sentencing

8    guidelines?

9              THE DEFENDANT:  Yes, your Honor, I have.

10             THE COURT:  Do you understand I won't be able to

11   determine what the relevant guideline range is until after a

12   presentence report has been completed by the probation office

13   and you and the government and your attorneys have had a full

14   opportunity to challenge any of the facts reported by the

15   probation office?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Now, if I accept your guilty plea this

18   morning, you will be interviewed by the probation department.

19   Ms. Chaudhry and Mr. Zuckerman can be there, if they so wish.

20   It's important that you give the probation department accurate

21   and complete and truthful information.  Do you understand that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Because I am going to use that report in

24   determining what an appropriate sentence is for you.  As I just

25   told you, Ms. Chaudhry will be able to object to any findings

14

1   of fact in the presentence report.  The government will have

2   the same opportunity.  If there are objections, I then will

3   adjudicate the objections.  So it is important that you give

4   them accurate information.  It's a quite thorough report.  Your

5   sentencing is going to be put off for a few months in order, in

6   part, for the probation department to prepare that, and also

7   for your attorneys to submit a sentencing submission and for

8   the government to do so.

9       But the point here is, when they interview you, be

10  truthful with them.  Do you understand that?

11      THE DEFENDANT:  Yes, your Honor.

12      THE COURT:  On the basis of that probation department

13  presentence report and my reading of the law, and the

14  submissions of the parties, I'll be able to determine what the

15  relevant guideline range is that applies to your case.  But

16  even after I do that, I have the ability to impose a sentence

17  based on a departure from the guidelines, in other words, I can

18  sentence you to something greater than that's called for by the

19  guidelines or I can sentence you to something less than that

20  called for by the guidelines on the basis of a departure from

21  the guidelines.  Do you understand that?

22      THE DEFENDANT:  Yes, your Honor.

23      THE COURT:  Even after I do that, that is, even after

24  I determine first what the appropriate guideline range is and

25  then determine whether there are grounds to depart either

1    upward or downward from the guideline range on the basis of a

2    departure, I then have to apply all of the factors in 18,

3    United States Code, Section 3553(a) to determine whether I

4    should vary from the guideline range.  Do you understand that?

5    In other words, sentence you to something that's less than the

6    guideline range or, I take it, more than the guideline range,

7    on the basis of the variance, but certainly the normal variance

8    is something below the guideline range.  Do you understand

9    that?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  Do you understand that when you're

12   sentenced to prison, the system of parole that used to exist in

13   the federal criminal justice system has been abolished.  So

14   that when I sentence to you prison, ma'am, you are going to

15   serve that entire term in prison.  There is a system whereby

16   you can be released a bit earlier on good-time credits, if you

17   follow all the rules and regulations of the correctional

18   facility where you're located, but you will not be released any

19   earlier on parole.  Do you understand that?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Do you understand that if your attorney or

22   anyone else has attempted to estimate or predict what your

23   sentence will be that their estimation or prediction could be

24   wrong?  Do you understand that?

25            THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Do you understand that if you yourself

2     think you know what your sentence is going to be, you can be

3     wrong as well?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  The reason for that is, I'm the one who is

6     going to sentence you, Ms. Shah, and I don't know what your

7     sentence is going to be.  I just simply don't know enough about

8     you, about your upbringing, about your financial situation,

9     about your educational background, your business background,

10    any criminal history you may have.  I know essentially nothing

11    about that.  So I don't know what your sentence is going to be.

12    And if I don't know what your sentence is going to be, and I'm

13    the one who is going to sentence you, nobody can know what your

14    sentence going is to be.  Do you understand that?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Do you understand if I do sentence you to

17    something that you are not expecting or something that people

18    have told you you are not going to receive, in other words, if

19    it's different from what you're expecting or what other people

20    have told you you are going to receive, you still are going to

21    be bound to this guilty plea, Ms. Shah, and you won't be

22    allowed to withdraw it.  Do you understand that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Now, I referred to the document that's on

25    my bench at the beginning of this procedure.  It's dated July

 1   10.  It's addressed to yourself and several lawyers at

 2   ChaudhryLaw.  It has an Exhibit A attached to it.  And the

 3   letter itself is six pages.  It appears to be signed by

 4   Mr. Swett, and there is what looks like your signature and

 5   perhaps Ms. Chaudhry's signature, although that's a little

 6   harder to understand.  It's illegible.  I'll show it to you,

 7   Ms. Chaudhry.  You can tell me if it's your signature.

 8           MS. CHAUDHRY:  Yes, your Honor, it is signed by

 9   Ms. Shah and me.

10           THE COURT:  I am going to ask my deputy to mark this

11   as Government Exhibit 1, and I am going to ask her to show you

12   the signature page.

13           Ms. Shah, is that your signature?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  Ms. Chaudhry, I think you told me you

16   signed it as well?

17           MS. CHAUDHRY:  That's correct.

18           THE COURT:  Did you read that agreement, Ms. Shah,

19   before you signed it?

20           THE DEFENDANT:  Yes, your Honor, I did.

21           THE COURT:  Did you discuss it with Ms. Chaudhry and

22   Mr. Zuckerman before you signed it?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Did you understand it, ma'am, at the time

25   you signed it?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Did Ms. Chaudhry or Mr. Zuckerman answer

3    any questions you may have had before you signed it?

4          THE DEFENDANT:  Yes, your Honor.  They answered all my

5    questions.

6          THE COURT:  Does this letter agreement, Government

7    Exhibit Number 1, constitute your complete and total

8    understanding of your entire agreement between the government,

9    your attorneys, and yourself?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Is everything about your plea and sentence

12    contained in this agreement?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Is there anything that's been left out?

15    Are there any side deals or other arrangements that I should

16    know about?

17          THE DEFENDANT:  No, your Honor.

18          THE COURT:  Has anyone offered you any inducements,

19    Ms. Shah, or threatened you or forced you to plead guilty or to

20    enter into the plea agreement?

21          THE DEFENDANT:  No, your Honor.

22          THE COURT:  Now, in the plea agreement the parties

23    have stipulated that the appropriate guideline range is 135 to

24    168 months' imprisonment.  In other words, the bottom of the

25    guidelines calls for a sentence of more than 11 years and the

1    top of the guidelines calls for a sentence of 14 years.  Do you

2    understand that?

3                    THE DEFENDANT:  Yes, your Honor.

4                    THE COURT:  Do you understand that the determination

5    of what the guideline range is is not for the parties to make

6    and it's not for the probation department to make.  It's for

7    the Court to make.  Do you understand that?

8                    THE DEFENDANT:  Yes, your Honor.

9                    THE COURT:  So that my determination of the

10   appropriate guideline range may be different than this 135 to

11   168 months stipulated guideline range.  Do you understand that?

12                   THE DEFENDANT:  Yes, your Honor.

13                   THE COURT:  Government, take a look at page 2 of the

14   plea agreement, both parties, and, in paragraph 7, I think

15   there is just a typographical error.  I am not sure.  It says:

16   Sentencing of the instance offense.  I think that should simply

17   be instant offense.  Is that right?

18                   MS. FLETCHER:  Yes, that's right, your Honor.

19                   THE COURT:  Ms. Chaudhry, do you agree?

20                   MS. CHAUDHRY:  Yes, your Honor.

21                   THE COURT:  I don't see any need to change it as long

22   as it's on the record.  Let's not go through changing a simple

23   typographical error.

24                   Do you understand, Ms. Shah, that in this agreement

25   you have agreed not to file a direct appeal from the sentence

1   and you have agreed not to bring a collateral challenge to the

2   sentence if I sentenced you to 168 months in prison or fewer

3   months.

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Do you understand that in this agreement

6   you've admitted the forfeiture allegation with respect to Count

7   One and agreed to forfeit to the United States $6,500,000 in

8   United States currency?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Do you understand that in this agreement

11  you've also agreed to make restitution to the victims of your

12  criminal conduct in the amount of $9,500,000?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Do you understand that you have agreed to

15  waive any defense based on the statute of limitations with

16  respect to any prosecution that's not time barred by today?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Ms. Chaudhry, are you aware of any valid

19  defense that would prevail at trial or know of any reason why

20  Ms. Shah should not be permitted to plead guilty?

21          MS. CHAUDHRY:  No, your Honor.

22          THE COURT:  Is there an adequate factual basis, in

23  your view, ma'am, to support your client's plea?

24          MS. CHAUDHRY:  There is.

25          THE COURT:  Ms. Fletcher, is there an adequate factual

1     basis to support the defendant's plea this morning?

2          MS. FLETCHER:  There is, your Honor.

3          THE COURT:  Ms. Shah, I am now going to ask you what

4     you did that makes you guilty of Count One of this indictment.

5          MS. CHAUDHRY:  Your Honor, I prepared a statement that

6     she will be reading from.

7          THE COURT:  Ms. Shah, perfectly permissible for your

8     lawyer to have worked with you in preparing the statement you

9     want to make, but what I need to hear from you is that what you

10    are about to tell me is true.

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Why don't you tell me now what you did.

13    Read slowly.  When people are nervous and they read, they tend

14    to read rather quickly, and I need the reporter to be able to

15    take it down.  I need to be able to process what you're telling

16    me.

17         THE DEFENDANT:  Yes, your Honor.

18              From 2012 to March 2021, in the Southern District of

19    New York and elsewhere, I agreed with others to commit wire

20    fraud.  I did this by knowingly providing customer names to

21    people who were marketing business services that had little or

22    no value.  However, I knew the purchasers of these services

23    were misled about the value and that's why they bought the

24    services.  We used interstate telephones and e-mails to market

25    and sell these services.  Furthermore, while doing this, I knew

1    many of the purchasers of these services were over the age of

2    55.

3                I knew this was wrong, I know many people were harmed,

4    and I am so sorry.

5                THE COURT:  Were more than 20 people over the age of

6    55?  I don't know what the statutory amount is.  I think 20, I

7    believe.  I'm asking the defendant.

8                MS. FLETCHER:  Your Honor, I believe the statute

9    requires more than 10.

10               THE COURT:  More than 10.

11               MS. CHAUDHRY:  Yes.  Your Honor, we had done enough

12   diligence to be able to say for sure that there were more than

13   10.

14               THE COURT:  But I would like to hear that from the

15   client.

16               THE DEFENDANT:  Yes, your Honor, more than 10.

17               THE COURT:  Now, you said something, this is why they

18   bought whatever it is they bought.  What were you referring to?

19   What was the reason they bought what they were buying?

20               THE DEFENDANT:  The misrepresentations of the product

21   is why they purchased the service.

22               THE COURT:  What were the misrepresentations?

23               THE DEFENDANT:  Regarding the value of the product or

24   service.

25               THE COURT:  What were the misrepresentations regarding

1    the value of the service?

2            THE DEFENDANT:  That it had little or no value.

3            THE COURT:  In other words, the representations were

4    that it had value or it was a misrepresentation because it had

5    little or no value.  Is that what you are telling me?

6            THE DEFENDANT:  Yes, that's correct, your Honor.

7            THE COURT:  Government, anything else you're seeking

8    on the allocution?

9            MS. FLETCHER:  No, your Honor.  Thank you.

10           THE COURT:  Ms. Shah, when you did these acts, did you

11   know that what you were doing was wrong and illegal?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Ms. Fletcher, what evidence does the

14   government have against this defendant?

15           MS. FLETCHER:  Your Honor, were the defendant to

16   proceed to trial, the government anticipates that the evidence

17   would show that between approximately 2012 and 2016, the

18   defendant primarily acted as a lead broker responsible for

19   selling victim information to other sales floors, that she

20   shared in the profits that those sales floors earned when they

21   lied to victims, and that she directed sales floors as to which

22   so-called fulfillment services they should use, which upsell

23   floors they should use, and how the sales should be conducted.

24           During this time period, the government would

25   introduce evidence that the defendant was made aware of several

1  Federal Trade Commission lawsuits brought against sales floors

2  that the defendant worked for or worked with and that alleged

3  that these floors were engaged in deceptive practices.

4          The government would further show that between 2017

5  and 2021, in addition to acting as a lead broker, the defendant

6  owned and operated a Manhattan-based sales floor calls Mastery

7  Pro Group.

8          THE COURT:  Mastery Pro Group?

9          MS. FLETCHER:  Yes, your Honor.

10         In that role, the defendant oversaw the sales floor

11  herself, handled victim complaints and chargebacks, and

12  supervised salespeople who directly lied to victims of the

13  scheme.  She was aware the government would show, through

14  witness testimony, electronic communications, screenshots on

15  her phone and other evidence, that the salespeople that worked

16  for her lied to victims about their ability to make money in

17  their home-based businesses, the value of the products that her

18  business was selling to those victims, and other

19  misrepresentations.

20         While the defendant was operating Mastery Pro Group,

21  the government anticipates the evidence at trial would show

22  that the defendant became aware that other individuals engaged

23  in similar conduct, that is, operating biz-op sales floors,

24  were criminally charged in this district.

25         The evidence, including electronic communications,

1   would show that the defendant communicated with her

2   coconspirators about the fact of these criminal charges and

3   that she and her coconspirators took steps to conceal the

4   operation of Mastery Pro Group and the financial records

5   associated with it.

6         She did this, and the government would show this

7   through evidence reflecting that the defendant did not put her

8   name on bank accounts associated with the business, and instead

9   the bank accounts were in the names of her coconspirators or

10  her relatives.

11        The financial records would further show that the

12  defendant only received payment from Mastery Pro Group in cash,

13  through the use of a company credit card and through payments

14  made by the company for a New York City apartment that she

15  lived in and/or other goods.

16        The evidence would show, and this would come in

17  through cooperator testimony and electronic communications

18  taken from electronic devices.  The evidence would further show

19  that the defendant used encrypted applications to communicate

20  with coconspirators, that she and her coconspirators took steps

21  to move the operation of certain aspects of the scheme offshore

22  to Kosovo, and that she and coconspirators incorporated several

23  businesses in Wyoming to conceal the ownership of those

24  businesses.

25        Finally, the government expects that the evidence at

1  trial would show, and this would occur through testimony from a

2  coconspirator and other records, that the defendant directed a

3  coconspirator to lie under oath in a deposition taken by the

4  Federal Trade Commission in an effort to conceal her role in

5  the scheme and that she provided that coconspirator with

6  written talking points that he should follow during his

7  deposition.

8         As I said, your Honor, this evidence would include

9  financial records, including records showing cash withdrawals

10  from the Mastery Pro Group bank accounts matched to large

11  structured cash deposits in the defendant's bank accounts, her

12  text messages, her e-mails, screenshots of communications on

13  her phones, communications with coconspirators, including about

14  victims.  The government anticipates that while there are

15  thousands of victims of the scheme, several of those victims

16  would testify at trial about the lies they were told by Mastery

17  Pro Group salespeople acting at Ms. Shah's direction.

18         The government would also offer other evidence,

19  including recordings made by coconspirators, about the scheme,

20  lease documents from Mastery Pro Group reflecting the

21  defendant's name, and, finally, tax returns showing that she

22  intentionally underreported her crime proceeds by hundreds of

23  thousands of dollars over several years in an effort to conceal

24  her scheme.

25         THE COURT:  Now, Ms. Fletcher, you used the term

1    biz-ops there, which I take it is the shorthand for business

2    opportunities.  Is that what Mastery Pro Group was foisting on

3    the public, alleged business opportunities?

4            MS. FLETCHER:  Yes, that's right, your Honor.  As your

5    Honor knows from having presided over this case, there are a

6    series of different business opportunity products that are sold

7    to customers in this space.  The first service is a so-called

8    coaching service.  So the defendant primarily provided leads to

9    coaching floors who would sell coaching to these victims.

10           After the individuals had been sold coaching, they

11   would be passed along to a tax floor that would sell them

12   business entity setup or other sort of -- what are referred to

13   as tax products.

14           Finally, if the victim had purchased coaching and tax

15   products, they would be passed along to Mastery Pro Group and

16   sold a custom-designed website to operate their online business

17   and so-called marketing products to advertise their business to

18   the public.

19           THE COURT:  I take it the position of the government

20   is that there was no substance to the coaching tax products or

21   website?

22           MS. FLETCHER:  That's right, your Honor.  Were this

23   case to go to trial, the government anticipates that

24   individuals who operated coaching floors would say that the

25   purpose of the coaching sale was to convince the coaching buyer

1    that he or she needed to buy the coaching, the tax-prep

2    products, and the marketing products that would later be sold

3    to the customer by sales floors like the defendant's.

4                    THE COURT:  Thank you.

5                    Ms. Shah, how do you now plead to the charge in Count

6    One in indictment S4 19 CR 833, guilty or not guilty?

7                    THE DEFENDANT:  Guilty.

8                    THE COURT:  Are you pleading guilty, Ms. Shah, because

9    you are guilty?

10                   THE DEFENDANT:  Yes, your Honor.

11                   THE COURT:  Are you pleading guilty voluntarily and of

12   your own free will?

13                   THE DEFENDANT:  Yes, your Honor.

14                   THE COURT:  Ms. Chaudhry, do you wish any further

15   questions on the allocution?

16                   MS. CHAUDHRY:  No, your Honor.

17                   THE COURT:  Government, anything further on the

18   allocution?

19                   MS. FLETCHER:  No.  Thank you, your Honor.

20                   THE COURT:  I now am going to sign the consent

21   preliminary order of forfeiture in the sum of $6,500,000.  I

22   have done that.

23                   Ms. Shah, because you acknowledge that you are guilty

24   as charged, because I find you know your rights and are waiving

25   them knowingly and voluntarily, because I find your plea is

1    entered knowingly and voluntarily and is supported by an

2    independent basis in fact containing each of the essential

3    elements of the offense, I accept your guilty plea and adjudge

4    you guilty of Count One of the indictment.

5              I'm setting the date for sentencing at October 12.

6              MS. CHAUDHRY:  Your Honor, I'm sorry to interrupt you.

7    We have another trial starting on October 11.  If we could

8    please ask for a date around Thanksgiving.

9              THE COURT:  How long is that trial?  Who is it before?

10             MS. CHAUDHRY:  It's in state court, your Honor.  It's

11   at 111 Centre Street before the Honorable Sabrina Kraus.  She

12   set the date approximately three weeks ago.  And I anticipate

13   it will be approximately a three-week trial.

14             THE COURT:  Let's do this.  What's the position of the

15   government?

16             MS. FLETCHER:  May I have a moment, your Honor?

17             THE COURT:  Yes, of course.

18             MS. FLETCHER:  Your Honor, we would request the Court

19   set a date, if possible, the week before Thanksgiving, which

20   sounds like it should give defense counsel enough time with her

21   trial.

22             THE COURT:  Ms. Chaudhry.

23             MS. CHAUDHRY:  Your Honor, when would you like the

24   defense sentencing submission?

25             THE COURT:  I want them three weeks in advance of the

1    sentencing.

2           MS. CHAUDHRY:  Your Honor, given that, if we could

3    have just after Thanksgiving, in case we have posthearing

4    briefs in our other trial.

5           THE COURT:  Let me do this.  I don't know what the

6    likelihood of the state trial going forward is.  Let me set it

7    for October 12.  If, as you come up to it, the trial is

8    actually going to go forward, then I certainly will give you an

9    adjournment until Thanksgiving time.

10          Does that make sense, Ms. Chaudhry?

11          MS. CHAUDHRY:  Yes, your Honor.  I can say with a high

12   degree of confidence that that case is going forward.  We have

13   been waiting for a trial date for five years.

14          THE COURT:  Yes, Ms. Fletcher.

15          MS. FLETCHER:  Your Honor, perhaps in light of the

16   conflict, the sentencing could be moved just one week earlier.

17   I think that should still give the probation department --

18          THE COURT:  One week earlier from October 12, you

19   mean?

20          MS. FLETCHER:  That's right, your Honor.

21          THE COURT:  I don't think that takes care of

22   Ms. Chaudhry's concern.  Let's do it at Thanksgiving time.

23          Ms. Blakely.  I want three weeks in advance for

24   defense submission and two weeks in advance for the

25   government's submission.

1          Monday, the 28th, 2:30 p.m. in this courtroom.

2   Defense submission, November 7; government's submission,

3   November 14.

4          I take it there is no application regarding bail?

5          MS. FLETCHER:  No application, your Honor.

6          THE COURT:  Ms. Chaudhry, you understand that you're

7   being released on all the conditions of release that you have

8   been on released up until now.  You have to continue to abide

9   by all of the conditions of release.  You understand that,

10  correct?

11         MS. CHAUDHRY:  Your Honor, I believe you misspoke and

12  you asked if I'm aware.  I think you meant Ms. Shah.

13         THE COURT:  I did mean Ms. Shah.  I'm sorry,

14  Ms. Chaudhry.

15         Let me restate it then.

16         Ms. Shah, I am directing you to return to this

17  courtroom on the date I set for sentencing.  I've granted the

18  request of your attorney, in light of a trial that she may have

19  in state court.  You are not going to be remanded in the

20  interim.  It's important that you continue to abide by all of

21  the conditions that you've been released on up until now.  Do

22  you understand?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Do you also understand that if you don't

25  come to court on that date, or any adjourned date I set, you

1   are will suffer an additional penalty for not appearing at that

2   time.  Do you understand that?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Is there anything else, defense?

5            MS. CHAUDHRY:  Nothing else, your Honor.

6            THE COURT:  Anything else, government?

7            MS. FLETCHER:  No.  Thank you, your Honor.

8            THE COURT:  I'll see you then at your sentencing,

9   Ms. Shah.

10           Thank you, all.

11           (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25